# THE CENTRAL AND GEORGETOWN ROAD CO. v. THE PEOPLE EX REL. TAYLOR.

1. It seems that under the constitution so much of any act as is not directly germane to the subject expressed in the title, is without force. That the provision of the constitution is a mandatory declaration of an essential condition to the validity of legislative enactments.

2. Under chapter twenty-five of the Code, a proceeding instituted for the purpose of remedying the usurpation or misuse of a corporate franchise or a public office, is by civil complaint and summons. The criminal *form* of the old action is superceded by civil action. In terms, chapter seventy-three of the Revised Statutes authorizing proceedings by *quo warranto*, is repealed by section 477 of the Code.

3. It seems that a mere statement of legal conclusions, with a demand that the defendant show by what authority it exercises a franchise, as was anciently tolerated when the proceeding was by information in nature of a *quo warranto*, would not be sufficient under the Code.

4. A defect in pleading may be aided by pleading over.

5. A toll road company organized under the incorporation act of 1864 (Laws 1864, p. 66, § 28), may not establish and collect tolls at two gates distant less than ten miles from each other.

6. When the interpretation of a charter is doubtful, that construction is to be given to it which is most favorable to the public, provided it be equally reasonable.

7. It is competent for the commonwealth, through its courts, to waive a forfeiture of a charter, and it is generally its duty to do so when the infraction of its provisions is not willful.

*Appeal from District Court of Clear Creek County.*

THE case is stated in the opinion.

Mr. WILLARD TELLER, for appellant.

Mr. THOMAS MITCHELL, for appellee.

THATCHER, C. J.   Under chapter twenty-five of our Code of Civil Procedure, the district attorney of the first judicial district, in the name of the people, upon the relation of Frank M. Taylor, filed a civil complaint, and caused a summons to issue to the defendants in substantial compliance with the provisions of the Code.

The first question that presents itself for our consideration, is the validity of chapter twenty-five, which concerns " Actions for the usurpation of an office or franchise." The title of the Code (of which this chapter is part) is "An act providing a system of procedure in *civil* actions in the courts of justice of the State of Colorado."

Our constitution provides (Sec. 21, Art. 5): " No bill * * * shall be passed containing more than one subject, which shall be clearly expressed in its title; *but if any subject shall be embraced in any act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed.*"

Omitting the important italicised words, the constitutions of the States of California and Ohio contain the same provision.

By the Supreme Courts of those States, it is held that this provision is not mandatory, and that a law passed in violation thereof would not be void. In *Pierpont* v. *Crouch*, 10 Cal. 315, Mr. Justice Field, speaking for the court, says: "The object of the constitutional provision was to secure some congruity or connection in the subjects embraced in the same statute, but as the provision is merely directory, it can only operate upon the conscience of the law maker. It creates a duty of imperfect obligation, for the infraction of which there is no remedy in the courts." In *Pim* v. *Nicholson*, 6 Ohio St. 180, construing the same provision, the court uses this language: "This provision being intended to operate upon bills in their progress through the General Assembly, it must be held to be directory only. It relates to bills, and not to acts. It would be most mischievous in practice, to make the validity of every law depend upon the judgment of every judicial tribunal of the State as to whether an act or a bill contained more than one subject, or whether this one subject was clearly expressed in the title of the act or bill. * * * No practical benefits could arise from such inquiries. We are therefore of the opinion that in general the only safeguard against the violation of these rules of the houses, is their regard for and their oaths to support the constitution of the State."

The added words in the section of our constitution are quite significant, and apparently employed for the purpose of avoiding the construction placed upon the first part of the provision by the courts of California and Ohio. Perhaps there is no escaping the conclusion, that under our constitution, so much of any act as is not directly germane to the subject expressed in the title, is without force ; that the provision instead of being only a rule of the General Assembly to regulate their procedure, is a mandatory declaration of an essential condition to the validity of legislative enactments. If this be its true construction, it follows that if a proceeding instituted for the purpose of remedying the usurpation or misuser of a corporate franchise, or a public office be in its nature *substan-*

*tially* criminal, chapter XXV of the Code, is without validity. Under this chapter the proceeding is by civil complaint and summons. The criminal *form* of the old proceeding is superseded by a civil action. In terms chapter seventy-three of the Revised Statutes, authorizing proceedings by information in the nature of a *quo warranto* is repealed. Code, Sec. 477. In obedience to the universally recognized rule that a sovereignty conferring a franchise may at any time, in its own appointed way and forms, inquire into the manner in which the franchise granted is used, we entertain no doubt of the validity of chap. XXV, nor of section four hundred and forty-seven of the Code. Potter's Law of Corporations, Sec. 665.

Whatever may be the form of the action prescribed by the General Assembly, whether by information in the nature of *quo warranto*, or by the ancient writ of *quo warranto*, or by complaint under the Code in a civil action, the objects to be attained are identical, and the proceeding is, *in substance*, civil, instituted for the determination of purely civil rights. High Ex. Leg. Rem. Sec. 591 ; *King* v. *Francis*, 2 Term R. 484 ; Angell and Ames on Corporations, Sec. 733; *Commonwealth* v. *Commissioners*, *etc.* 1 Serg. & Rawle, 380 ; *Commercial Bank*, *etc.* v. *The State of Mississippi*, 4 Smedes & Marshall, 504 ; *The People* v. *Utica Insurance Co.* 15 Johns. 386 ; *The People* v. *Cook*, 8 N. Y. 70 ; *State ex rel. Page* v. *Smith*, 48 Vt. 282.

We therefore conclude that the proceeding under the Code was properly instituted. The complaint alleges that the Central and Georgetown Railroad Company was incorporated on the thirteenth day of October, 1864, under the provisions of the General Act of the Territory of Colorado, entitled "An act to amend an act to enable road, ditch, manufacturing and other companies to become bodies corporate," approved March 11th, 1864; that the said company, in execution of the powers conferred upon them by the said act, erected in the year 1864, a toll gate upon their route at Fall River, in Clear Creek county aforesaid, and applied to the county commissioners of said

county to prescribe the rates of toll to be collected thereat; that the said commissioners did, in October, 1864, prescribe such rates, and the said company have ever since collected tolls at said gate, and still continue so to do; that in the month of March last past (A. D. 1878), the said company erected a toll house at a point upon their route, between the town of Georgetown, one of the termini of said road, and Fall River aforesaid, in the county aforesaid, and have posted upon said house a notice of the rates of toll demanded by them thereat; *that it is less than ten miles* from the said toll gate at Fall River to the said last mentioned toll house, and that the rates of toll posted thereat as aforesaid have never been prescribed by the county commissioners of, or any tribunal transacting county business in, said Clear Creek county, as required by law; that the said company, for the space of at least three months last past, have exercised without any warrant, charter, or grant, the franchise of collecting toll at said last mentioned toll house, and have demanded and collected thereat large amounts of toll from a large number of persons traveling over said road between Georgetown and Fall River aforesaid, and intermediate points, and still continue so to do: wherefore judgment is demanded. 1st. That the said defendant be excluded from all corporate rights, privileges and franchises; 2nd. That the said corporation be dissolved; and 3d. For costs of this action; and for such other and further relief in the premises as the case may require, and to the court may seem just.

To this complaint a demurrer was filed and overruled. A question is made in this court whether the complaint sets out the facts constituting the usurpation or cause of action within the meaning of the Code. Doubtless the mere statement of legal conclusions, with the demand that the defendant show by what authority it exercises a franchise, such as was anciently tolerated when the proceeding was by information in the nature of a *quo warranto*, would not be sufficient under the Code. *State* v. *Messmore*, 14 Wis. 120. Although the cause of action is perhaps defectively set out, as the case is not now be-

fore us on demurrer, and as the subsequent pleadings aided the complaint in this respect if it be defective, we do not deem it necessary to notice this objection. *DeLamar et al.* v. *Hurd*, 4 Col. 1; Gould's Pl. p. 154, Sec. 192.

By the pleadings and evidence, the question is squarely presented whether a toll-road company organized under the Incorporation Act of A. D. 1864 (Laws of 1864, p. 57, Sec. 28), may establish and collect tolls at two gates, distant less than ten miles from each other. The section under which the company was incorporated provides that " said company shall have the right   *   *   *   to erect toll gates, not to exceed one to every ten miles of road, and to collect tolls thereat at the rates prescribed by the county commissioners or the tribunal transacting county business, which rates shall be written, printed or painted in a legible manner, and conspicuously posted at each of such gates." The evidence shows that the Fall River gate and the gate near Lawson were distant eight miles from each other. The Fall River gate was first established. By the board of commissioners, at a duly convened meeting in October, A. D., 1864, it was *inter alia*, ordered: "And it appearing to said board that said corporation desire to erect toll gates on said road, according to law, and desire said board to fix and establish the rates of toll at any such toll gate or gates: Now therefore, we, the said board of county commissioners, in consideration of the premises, and by virtue of the power and authority vested in us by law and by the act aforesaid, do order, adjudge and decree that the said corporation, styled ' The Central and Georgetown Road Company,' may erect toll gates upon said road, not to exceed one to every ten miles of said road, and may charge toll at said toll gate or gates, and the rates of charges at any such toll gates shall be as follows," etc.

It is needless to say that the board of county commissioners was powerless to authorize the erection of and taking of toll at more than " one gate to each ten miles." Their whole authority in the premises is based upon the statute under which the company was organized, and it is to be presumed that the

rates of toll were established in view of the existing law. The defendant contends that the language of the statute is complied with, if two or more gates be erected within a space of ten miles, provided that the whole number of gates erected on the road does not average in excess of one to each ten miles. This is a possible construction, but we do not think a reasonable one. It is not in the interest of the public that the gates should be close together. When the interpretation of a charter is doubtful, that construction is to be given to it which is most favorable to the people, provided it be equally reasonable. The learned judge of the court below in his opinion filed in this case, pertinently remarks upon the point under consideration, as follows: "No other act, prior or subsequent, affects the status of a wagon road company organized under the law of 1864, either by extending or curtailing its powers, franchises and privileges; hence we must look to the act of 1864 as the source of all the powers and privileges granted to the defendant. It is argued by counsel for the defendant that this act did not fix the distance between gates, but only restricted the number of gates in respect to the entire length of the road, the limit being one gate to ten miles of road, which would entitle the company to two gates for twenty miles, leaving the place of location to the option of the company. If this be the proper construction of the statute, then the two gates upon the twenty miles of road may be located within one mile, or even a shorter distance of each other. The consequences of such a construction of the statute would be both an inconvenience and an injury to the public. The greater portion, perhaps, of the travel upon a public road, is only over a portion of its entire extent, coming as it does from converging and intersecting roads. Under the rule contended for by defendant, it would be in the power of the company to impose the same burdens and inconveniences upon the traveler passing over about one-half of the road, as upon those passing over the entire line. This would be inequitable, and could not have been contemplated by the law makers; hence this

construction of the act of 1864 must be rejected as unreasonable. The intention must have been to limit the distance between the gates to not less than ten miles."

We are in full accord with the views here expressed, and are consequently of opinion that the gate near Lawson was established, and toll collected thereat without authority of law. We do not wish to be understood as intimating that in no event may there be two gates, where the length of the road is more than ten and less than twenty miles, or that if the entire length of the road is not ten miles there can be no gate. What we do decide is that wherever there are two gates or more, the distance between them must be not less than ten miles.

The court found that the defendant was guilty of unlawfully erecting and maintaining a toll house near Lawson, as a toll gate, and was collecting tolls thereat without authority of law; wherefore it was adjudged that the defendant be excluded from further exercising the right and privilege of collecting tolls at the said toll gate, and that the defendant pay the costs of the action. It is competent for the commonwealth, through its courts, to waive a forfeiture of a charter, and it is generally its duty to do so where the infraction of its provisions is not willful. Under the circumstances of this case, the judgment of the court in excluding the defendant only from the right and privilege of collecting toll at the gate near Lawson, was, we think, a proper judgment, and it will be affirmed.

*Affirmed.*