## ALBITZTIGUI *v.* GUADALUPE, ETC., MINING CO.

### (*Jackson.* May 20, 1893.)

1. CORPORATION. *Directors' liability to corporate creditors.*

    When the corporate assets paid in and remaining in the treasury subject to debts, though less than the subscribed stock, exceeds all indebtedness of the corporation, the directors cannot be held personally for corporate debts, as having created indebtedness in excess of the capital stock.

2. SAME. *Stockholders' liability to corporate creditors.*

    When the corporate assets are abundantly sufficient for payment of debts of the corporation, and 'have, either by law or by act of the corporation, been set apart and secured primarily for that purpose, stockholders cannot be compelled by creditors to pay up their unpaid stock subscriptions.

    Cases cited and approved: Allison *v.* Coal Co., 87 Tenn., 63; Johnson *v.* Churchwell, 1 Head, 146.

3. SAME. *Same.*

    Likewise, stockholders' statutory liability for employe's wages cannot be enforced if the corporate assets are unexhausted and sufficient to pay all debts of the corporation.

    Code construed: ∤ 1858 (M. & V.).

    Case cited and approved: Jackson *v.* Meek, 87 Tenn., 73.

4. SAME. *Same.*

    Stockholders' liability upon unpaid subscriptions or for employe's· wages cannot be enforced upon the evidence of insolvency afforded by judgment against corporation, and return of *nulla bona* thereon, in a county where it never had any property, it appearing that the complaining creditors had obtained, by act of the company or by legal proceedings, property of the corporation, situated elsewhere, sufficient for payment of their claims, and had not accounted for same.

5. SAME. *Same.*

    Doctrine re-affirmed that a *bona fide* purchaser of shares of stock, for value, and without notice that the subscription price is unpaid, cannot be held for the unpaid subscription.

Albitztigui *v.* Guadalupe, Etc., Mining Co.

Cases cited and approved: Planing Mill Co. *v.* Bank, 86 Tenn., 256; 59 Md., 1.

6. SAME.    *Payment of subscriptions in land.*

Rule stated as to payment of stock subscriptions in land.

Cases cited: Searight *v.* Payne, 6 Lea, 283; Ins. Co. *v.* Ins. Co., 11 Hum., 1; 101 U. S., 356; 109 U. S., 527; 90 N. Y., 87.

---

FROM SHELBY.

---

Appeal from Chancery Court of Shelby County. PIERSON, Sp. Ch.

J. H. WATKINS and W. ᵥ M. RANDOLPH & SONS for Complainants.

JOHN R. FLIPPIN, F. P. POSTON, MYERS & SNEED, MORGAN & MCFARLAND, MALONE & MALONE, H. C. WARRINER, LEE THORNTON, T. W. & R. G. BROWN, and THOS. M. SCRUGGS for Defendants.

WILKES, J.   This bill was filed in the Chancery Court at Memphis by creditors of defendant company, its share-holders and directors, seeking:

(1) Decrees against the company for debts claimed to be due to complainants from it, and to wind up the company as insolvent.

(2) To hold the stockholders liable for the company's debts, because the stock held by them has never been paid up.

(3) To hold the directors liable, because they

have knowingly permitted the company to contract debts in excess of the capital stock paid in.

(4) To hold the stockholders liable for debts due laborers, servants, and clerks.

The individual defendants contest their liability on the following grounds:

(1) They claim that the capital stock has been paid for in two mines situated in the State of Chihuahua, Republic of Mexico, valued at ten millions of dollars.

(2) That the debts of the company have never, at any time, exceeded the stock paid in, and hence the directors are not liable on that account.

(3) That the assets of the corporation have not been exhausted, and, until that is done, the stockholders and directors cannot be held liable.

(4) That complainants have, in their hands and under their control, property of the company in value exceeding the debts owing by the company, for which they have not accounted or offered to account, either before or after suit brought.

Only one of the original incorporators or subscribers is made a party to the suit, all of the other defendants having bought from the original stockholders or their transferees.

Upon the hearing, the Chancellor decreed that the mining company was liable for some amounts, and directed a reference to ascertain and report the amount due each claimant. The bill, as to the stockholders and directors, was dismissed. Complainants appealed, and have assigned errors.

It appears, from the proof and exhibits in the record, that the unpaid debts of the company are about $50,000, the exact amounts to be ascertained under the reference ordered.

It appears that Flippin, and other stockholders associated with him, have paid into the company, and for its benefit, about $165,000 in actual cash, and the company has received, from operating the mines, about $260,000. It also appears that the company had a certain hacienda property, contiguous to the mines, upon which were situated mills, machinery, implements, tools, etc, of the value of about $65,000.

A transfer of this property has been made to complainants, in trust for themselves and all other creditors of the company; and while the transfer and assignment was not regularly made by the company itself, still it is recognized and approved by the company.

This property, according to the testimony of the complainants themselves, is in excellent condition.

Independent of this transfer, under the mining laws of Mexico this property is subject to the payment of complainants' debts.

Whether we consider the entire capital stock of ten millions of dollars paid up in the two mines in Chihuahua, as contended by defendants, or whether we consider the $165,000 actually paid by a part of the stockholders in cash into the company as its only capital, or whether we consider

the property now in complainants' hands as the actual capital stock paid in, we find that the debts incurred and now outstanding are not in excess of either amount, and hence there is no liability, under the statute, as against the directors, and we need not consider the question whether the debts sued on were or were not incurred with the knowledge and assent of the directors.

Certain debts are claimed to be due to servants, clerks, and operatives of the company, for which it is sought to hold the stockholders liable under the provisions of the statute. M. & V. Code, § 1858.

It appears that the amounts thus claimed are due to three persons—to wit, Thompson, clerk, book-keeper, and manager of the company; Geo. Cann, a blacksmith and machinist, and Gee Lac, a Chinese cook. Each of these parties claims an amount due upon wages or salary, and also for money advanced, either directly to the company or in payment of debts against the company. The exact amount due to each cannot be ascertained until a reference is had, nor can the amounts due as wages be ascertained until that time. It is also claimed, by way of defense, that the claims thus presented are not of that class protected and provided for by the statute. However this may be, the claims do not exceed, in the aggregate, $7,500.

For reasons already stated, we are of opinion that these parties cannot maintain their suit as against the stockholders. It appears that the hacienda property, with the machinery, mills, etc., al-

ready mentioned, have been conveyed, and are now in the hands of complainants, to be applied to these debts as well as other debts of the company. This property is independent of the mines, and is estimated to be worth $65,000. These parties all live, or are engaged, at the mines. Their contracts were made there, and, under the Code of Mining Laws of Mexico, a special preference is provided for them against the property of the company and the output of the mines for the payment, first, of their wages, and, second, for the repayment of the amounts advanced to the company to operate the mines.

For the same reason and upon the same ground, the general creditors must fail in their contention as against the stockholders.

The assets of the corporation are first liable, and the liability of stockholders, either for employes' wages or for unpaid subscriptions, if any, does not arise, and cannot be enforced, until the corporate assets are exhausted. *Allison* v. *Coal Co.*, 3 Pick., 63; *Jackson* v. *Meek*, 3 Pick., 73; Morawetz on Corp., Sec. 869 *et seq.;* Thompson on Stockholders, Sec. 334; *Johnson* v. *Churchwell*, 1 Head, 146.

Only one of the parties to this action has reduced his claim to judgment. Upon this judgment, rendered against the company in Shelby County, an execution has issued, and been returned *nulla bona.* This would, under ordinary circumstances, be *prima facie* evidence of insolvency. It appears, however, that this company has no property in

Shelby County, and has never had; but its property is situated elsewhere. It also appears that this property has been conveyed to secure the debts of the company, and that complainants, Garcia and others, are in possession of the hacienda property mills, improvements, etc., for the benefit of themselves and all other creditors. In addition to this, it further appears that they have denounced the mines themselves, and taken them into possession under the laws of Mexico, or without warrant of law, and are operating the same.

From the record, it appears that the value of the property thus in the hands of complainants, and for their benefit, exceeds the amount of the debts claimed. How this may be is not yet developed, but the parties complainant have not accounted for any of this property in their possession, nor do they offer to account.

Coming into Court, and asking that equity be done, they must account for the property thus taken into possession, and now held by them, before other relief can be granted them against the stockholders of the company.

All the parties who are sued as stockholders in this cause, except R. F. Looney, hold their stock as transferees and not as original subscribers. They defend, also, upon the ground that they bought their stock in good faith, upon the assurance that it was paid up and non-assessable. The fact that it is paid up and not assessable appears printed upon the face of each stock certificate.

Under these facts, parties who in good faith hold the stock by transfer, cannot be held liable. *Planing Mill Co.* v. *Bank*, 2 Pick., 256; Cook on Stockholders, Secs. 50, 257, 423; Taylor on Corporations, Sec. 702; Morawetz on Corporations, Sec. 834; Waterman on Corporations, Vol. 2, Sec. 208; *Brandt* v. *Ehlen*, 59 Md., 1.

In this view of the case, we do not feel called upon to pass upon the question as to whether the entire capital stock was, in good faith, paid up in the mining property situate in Chihuahua, and whether such transaction would be legal, nor whether the property was estimated at a fictitious valuation.

That the capital stock may be paid in whole or part in property suitable for the purposes of the corporation, provided the same is taken at a cash valuation, is, we think, supported by the statute and the decisions. M. & V. Code, Sec. 1856; *Searight* v. *Payne*, 6 Lea, 283; Cook on Stockholders, Sec. 13; Waterman on Corporations, Vol. 2, Sec. 188; Morawetz on Corporations, Secs. 425, 426, 825.

And such property may be situate beyond the State. Morawetz on Corp., Sec. 359, 958, 360; *Christian Union* v. *Yount*, 101 U. S., 356; *Can. So. R. R.* Co. v. *Gebhard*, 109 U. S., 527; *Ohio Ins. Co.* v. *Mer. Ins. Co.*, 11 Hum., 1; 90 N. Y., 87.

It is seriously controverted whether the question of *bona fide* payment of the capital stock in land at a cash valuation is properly raised in the pleadings, and whether such question can be raised with-

out having before the Court all the original incorporators, but one of whom is a party to this action. In the view we have taken of the case, we do not think it necessary to pass upon these contentions.

The decree of the Chancellor is affirmed, with costs, and the cause remanded for further proceedings.