STATE, *ex rel.*, *v.* CUMBERLAND TELEPHONE & TELE-
GRAPH COMPANY *et al.*

## (*Nashville.*   December Term, 1904.)

1. **TELEPHONE COMPANIES.** Like telegraph companies are common carriers of news.

   Telephone companies like telegraph companies are common carriers of news, and as such are touched with a public use. (*Post, p.* 200.)

2. **CORPORATIONS.** Foreign admitted by comity, subject to our laws and jurisdiction of our courts.

   Admission of a foreign corporation to do business in this State is a matter of comity, and not of right, so that, when such corporation enters the State and undertakes to do business here, it becomes amenable to our laws and subject to the jurisdiction of our courts, exactly as a private individual or domestic corporation. (*Post, p.* 200.)

   Case cited and approved:  Bank v. Earle, 13 Pet., 519.

3. **SAME.** Forfeiture of charter or ouster must be adjudged in pursuance of statute, notwithstanding mistake and good behavior.

   Where a corporation is found guilty of an act of omission or commission which is expressly declared by statute to be a cause of forfeiture of its franchise, clearly the court has no jurisdiction to refuse a judgment of forfeiture, but is bound to award a judgment of ouster on demand of the State, although the corporation's default was the result of mistake, and notwithstanding its subsequent good behavior. (*Post, pp.* 201, 202.)

   Cases cited and approved:  State v. Canal Co., 23 Ohio St., 121; State v. Association, 35 Ohio St., 258; People v. Railroad, 53 Barb., 98.

State, ex rel., v. Telephone & Telegraph Co.

4. **SAME.** Forfeiture for failure to comply with statutes not declaring forfeiture is not to be adjudged, unless public interest requires it.

Where the failure of a corporation to do an act required by statute is not declared by the statute to be a cause of forfeiture of the corporation's franchise, and the violation of the statute by such failure has not been flagrant and persistent, and there is no menace to the public welfare, the court should refuse a judgment of forfeiture, unless the public interest requires it. (*Post, pp.* 202-210, 212.)

Cases cited and approved:    State v. Insurance & Trust Co., 8 Hum., 235; State v. Turnpike Co., 2 Sneed, 254; Harris v. Railroad, 51 Miss., 602; Royalton v. West Fairlee, 11 Vt., 438; State v. Association, 35 Ohio St., 258; State v. Association, 42 Ohio St., 579; State v. Railroad, 36 Minn., 246; State v. Turnpike Co., 102 Ind., 283; State v. Bank, 8 Vt., 489; State v. Packing Co., 173 Mo., 356; Weston v. Lane, 40 Kan., 479; State v. Railroad, 91 Iowa, 517; State v. Water Power (Wis.), 66 N. W., 512, 32 L. R. A., 391; People v. Turnpike Co., 23 Wend., 222; Attorney-General v. Railroad, 55 Mich., 15; State v. Railroad, 41 Tex., 217; Central, etc., Co. v. People, 5 Colo., 39.

Cases cited, distinguished, or disapproved:    State v. Turnpike Co., 1 Shannon's Tenn. Cas., 511; State v. Turnpike Co., 8 R. I., 521.

5. **SAME.** Foreign not complying with statute as condition of doing business are not entitled to affirmative relief, though failure was through mistake or inadvertence.

The failure of a foreign corporation to file an abstract of its charter and have it registered, as required by statute, in each county in which it does business, when that law was in force, would have been fatal to any application for affirmative relief made to one of the courts of the State for the breach of a contract which had been entered into with it as to business in one of these counties, although such failure so to comply with the statute was not the result of willfulness and intentional dis-

State, ex rel., v. Telephone & Telegraph Co.

regard of the law, but rather of a pure inadvertence or mistake. (*Post, pp.* 200, 201.)

Acts cited and construed: 1877, ch. 31; 1891, ch. 122.

Cases cited and approved: Lumber Co. v. Thomas, 92 Tenn., 593; Harris v. Water & Light Co., 108 Tenn., 245.

6. **SAME. Ouster not adjudged against foreign for omission to comply with statute as to local business, where statute imposed no such penalty, when.**

Where a foreign telephone corporation complied with our law for its admission into this State, but through inadvertence or mistake it failed to file and have registered an abstract of its charter, in each of the counties in which it opened up exchanges for business as required by a then existing statute, which omission was remedied by the corporation upon its discovery thereof, a judgment of ouster should not be rendered, if the statute imposed no such penalty for noncompliance therewith. (*Post, pp.* 200-202.)

Acts cited and construed: 1877, ch. 31; 1891, ch. 122.

7. **SAME. Telephone company's purchase of competing companies is not ground for forfeiture or ouster.**

A telephone company's purchase of small competing local telephone companies, to end a ruinous war of rates and to avoid further competition in these particular localities, where the small companies were in operation, was not illegal, nor ground for forfeiture of the purchasing company's charter or its ouster from the State. (*Post, pp.* 210, 211.)

Acts cited and construed: 1887, ch. 198.

8. **SAME. Ultra vires lease is not ground for forfeiture or ouster years after its avoidance and resumption of corporate duties, when.**

An *ultra vires* lease of its plant in a certain city made by a telephone corporation is not ground for a forfeiture of its franchise years after its avoidance of the lease as *ultra vires*, and its resumption of its corporate duties in that city. (*Post, pp.* 211, 212.)

State, ex rel., v. Telephone & Telegraph Co.

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County.—JOHN ALLISON, Chancellor.

E. H. HATCHER and PADGETT & FIGURES, for Relators.

VERTREES & VERTREES and W. L. GRANBERY, for Telephone Company.

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

The bill in this cause was filed upon the relation of certain citizens of Columbia, in Maury county, in this State, asking a decree ousting the Cumberland Telephone & Telegraph Company from the further exercise of its corporate franchises in Tennessee, save as they might concern interstate commerce. Many allegations of abuse upon the part of this company of its corporate duties and rights as furnishing grounds for such decree are made in the bill, only two of which were sustained by the chancellor. Upon an appeal to this court the cause was referred to the court of chancery appeals, when that court reversed the decree of the chancellor and dismissed the bill. The cause is now before us for review.

The Cumberland Telephone & Telegraph Company is a corporation organized under the laws of Kentucky, and is engaged in a general telephone business in Tennessee, Kentucky, Alabama, Mississippi, and other States. As early as 1883 or 1884 it entered this State, and established exchanges in many of its cities and towns. From these places lines were extended until, at the time of the filing of the present bill, practically all parts of the State were placed in easy telephonic connection, and by business arrangements which were made with other telephone systems the people of Tennessee were placed in touch with exchanges throughout the United States, and possibly Europe. Among the exchanges so established was one in the city of Columbia.

Through this exchange its citizens had all the advantages accruing to patrons of the company from its extensive interstate as well as foreign connections. In the development of the system, rates were fixed which in the process of time became so unsatisfactory to some of the people of that city and county that after a fruitless effort to secure a reduction, a competitive company, called the "City Telephone Company," was organized, the avowed purpose of which was to give cheaper telephone service to its patrons. A large number of these relators were instrumental in this movement, and at the time of the filing of this bill were pecuniarily interested in its success. Upon the organization of this company a central exchange was opened in Columbia, and from it lines were extended connecting with exchanges estab-

lished at different points in Maury county. The service which was rendered was charged for at figures much below the rates exacted by the defendant company. The rates thus fixed were found after a time much too low to enable the company to furnish efficient service, so that, to keep it in operation, donations, amounting to four or five thousand dollars, were made to it by citizens of that community.

The reductions referred to above, made by the new company, were promptly met by its competitor, and a war of rates began. The Cumberland Telegraph & Telephone Company agreed, among other things, to furnish telephone service at residences for 50 cents a month, and in some cases one of its canvassers proposed to place instruments in the homes of its subscribers without cost to them.

These details, while not essential to a right determination of the case, yet serve in part to illustrate the animus of these companies to each other, and furnish, in part, a motive for the institution of this proceeding. They clearly indicate that the contest involved a struggle for continued supremacy on the part of the older company, and for existence upon the part of the younger. Such a contest, in the nature of things, must have engendered much of personal bitterness; that it did do so is shown in this record.

Other facts found by the court of chancery appeals which raise the questions of law made on the decree of

that court will be referred to as these questions are presented in their proper order.

Before, however, coming to the consideration of these questions, it is well to state two propositions well established by the authorities, which bear in a general way upon this controversy.

The first of these is that a telephone like a telegraph company is a common carrier of news, and as such is touched with a public use. The second is that the admission of a foreign corporation to do business in this State is a matter of comity, and not of right, so that, when such corporation enters the State and undertakes business herein, it becomes amenable to our laws, and subject to the jurisdiction of our courts, exactly as is a private individual or a domestic corporation. 6 Thomp. on Corporation, section 7886; *Bank of Augusta* v. *Earle* 13 Pet., 519, 10 L. Ed., 274.

Coming now to the grounds of forfeiture insisted upon by the relators, we find the first of these to be that of a failure upon the part of the defendant company to register abstracts of its charter in the various counties of this State where it was doing business, as required by chapter 31, p. 44, of the Acts of 1877, amended by chapter 122, p. 264, of the Acts of 1891.

As to this, it is found by the court of chancery appeals that the defendant company in April, 1891, filed, as required by these two acts, a duly certified copy of its charter in the office of the Secretary of State of Tennessee, and an additional copy in April, 1894, but that it

failed to file an abstract of the charter, in each of the counties of the State where it opened up exchanges for business, with the register of these respective counties. The court reports that the corporation intended to file these abstracts, but by an inadvertence they were sent to the clerks of the county courts of these several counties, and as a result, were not registered at the time they were so sent. However, after the institution of this suit in 1896, and before the answer of the corporation was filed, upon discovering this mistake, these abstracts were registered in the several counties though, under an act amendatory of the acts of 1877 and 1891, this was no longer necessary.

In other words, the failure upon the part of the corporation to meet the statutory requirement in this respect, was not the result of willfulness and intentional disregard of the law, but rather of a pure inadvertence or mistake. That this inadvertence or mistake would have been fatal to any application for affirmative relief made to one of the courts of the State for a breach of a contract which had been entered into with it as to business done in one of these counties, is unquestionably true. *Cary-Lombard Co.* v. *Thomas,* 92 Tenn., 593, 22 S. W., 743; *Harris* v. *Columbia W. & L. Co.,* 108 Tenn., 245, 67 S. W., 811. But will an omission such as this move the court to the extreme step of decreeing a forfeiture of its right to transact all intrastate business?

If a corporation is found guilty of an act of omission or commission which is expressly declared to be a cause

of forfeiture of its franchise, clearly a court has no discretion to refuse such a judgment. *State* v. *Oberlin, etc., Ass'n,* 35 Ohio St., 258; *State* v. *Penn., etc., Canal Co.,* 23 Ohio St., 121; *People* v. *Northern R. R.,* 53 Barb., 98. In such a case, as a mere matter of law, a court is bound to award a judgment of ouster. Neither mistake on the part of the corporation nor subsequent good behavior will disable the State from demanding such judgment. 5 Thompson on Corporations, section 6644.

But it is to be observed that there is no statute which declares in terms that a violaton of the duty imposed in the regard now being considered involves, necessarily, a forfeiture of the right to do business in this State. If there was such statute, then, whether reasonable or unreasonable in its nature, it would be the imperative duty of the courts to enforce it. But as the law is silent, and the court is called upon to deal so rigorously with this corporation, it must be controlled by general principles as laid down in well-considered cases, and by the best text-writers dealing wth the subject.

First of all, we think a controlling consideration, when such action is invoked, must be the public interest; will it be subserved or not by the application of so strenuous a remedy? If it will not, then, in the absence of flagrant and persistent violation of a statutory duty, and especially where in the violation there is no menace to the public welfare, it would seem, as a matter of natural reason and justice, that the extreme penalty of

forfeiture should not be exacted. It is not every excess of power nor every omission of duty which will constitute cause of forfeiture of the charter of a corporation. *Harris* v. *Miss. Valley, etc., R. R.,* 51 Miss., 602; *Town of Royalton* v. *Town of West Fairlee,* 11 Vt., 438. Courts act with extreme caution in proceedings which have for their subject the forfeiture of corporation franchises, and we think that the great weight of authority is that a court may exercise its discretion, and should refuse a judgment of forfeiture if upon the whole case it finds that the interest of the public does not require it.

As is said in the valuable work of Mr. Spelling on Inj. and other Ex. Rem., vol. 2, section 1777: "That the court may exercise a considerable latitude of discretion, both as to whether it will grant a rule upon the defendant to show cause, where the proceeding is instituted in that way, and as to whether there has been sufficient abuse of franchise by a corporation to warrant their forfeiture, there can be no doubt upon the authorities. But so many relations, public and private, are involved in a forfeiture at suit of the State, and each case involves so many considerations peculiar to itself, that no definite general rules can be stated to guide courts and practitioners. It must be borne in mind that specific facts which have been held sufficient to warrant a judgment of forfeiture in one or several adjudged cases may be so modified by extraneous facts in another case as to deprive the former of value as guide to a correct decision. The most important, if not the only, interest to be ob-

served, is that of the public. Especially do these observations apply in cases where the proceedings are based upon misuser or nonuser of franchises. It may be considered well settled that not every misuser which may be detected will justify a forfeiture, but only those constituting a prejudice to some public interest, or which, being persisted in, will involve the safety, welfare, or security of the community."

It is true the author is here speaking of the exercise of discretion by a court upon a preliminary application for leave to file an information, but "the principle that the court has a discretion in the first instance in allowing the information to be filed carries with it, by parity. of reasoning, the conclusion that it has a similar discretion after hearing the evidence finally submitted under the issues made up, in granting or refusing the judgment prayed for on behalf of the State or the people." 5 Thomp. on Corporations, section 6811.

Further pursuing this subject, Mr. Spelling in the same volume, at section 1829, says: "The court will refuse a forfeiture, though the corporation is clearly guilty of a misuser, where it appears that no injury has resulted to the public. . . . Courts have a discretion to enter or refuse a judgment of forfeiture accordingly as the public injury appears serious or trivial. The general rule is that to warrant a forfeiture of corporation franchises for misuser, the misuser must be such as to work or threaten a substantial injury to the public."

State, ex rel., v. Telephone & Telegraph Co.

In the footnote the author cites many cases which support his text. It is unnecessary to incumber this opinion with a reference to those cases, as the work is readily accessible to the profession.

In section 443 of Wood's Field on Corporations, the author embodies in his text a paragraph to the same effect from High on Extra. Leg. Rem., as follows: "The principle is now firmly established that the granting or withholding leave to file an information, at the instance of a private relator, to test the right to an office or franchise, rests in the sound discretion of the court to which application is made, even though there may be a substantial defect in the title by which the office or franchise is held. In the exercise of this discretion, upon the application of a private relator, it is proper for the court to take into consideration the necessity and policy of allowing proceedings, as well as the position and motives of the relator in proposing it. . . . The court will also weigh the considerations of public convenience involved, and will compare them with the injury complained of, in determining whether to grant or refuse the application."

Supporting the view of these text-writers, in addition to the cases cited in their notes, we refer to *State* v. *Oberlin Bldg. & Loan Ass'n*, 35 Ohio St., 258; *State* v. *People's Mutual Benefit Ass'n*, 42 Ohio St., 579; *State* v. *Minn. Central Ry.*, 36 Minn., 246, 30 N. W., 816; *State* v. *Crawfordsville, etc., Turnpike*, 102 Ind., 283, 1 N. E., 395; *State* v. *Essex Bank*, 8 Vt., 489; *State* v. *Ar-*

*mour Packing Co.*, 173 Mo., 356, 73 S. W., 645, 61 L. R. A., 464, 96 Am. St. Rep., 515; *Weston* v. *Lane*, 40 Kan., 479, 20 Pac., 260, 10 Am. St. Rep., 224; *State* v. *Omaha R. R. Co.*, 91 Iowa, 517, 60 N. W., 121.

For the contention of the relators to the contrary of this view, we are referred by their counsel particularly to the case of *State* v. *Pawtuxet Turnpike Co.*, 8 R. I., 521, 94 Am. Dec., 123.

There a turnpike company made a conveyance of a portion of its road to the town, and afterwards ceased to keep that portion in repair. The legislature had previously relieved the corporation from the maintenance of a part of the road originally laid out, and permitted the receipt of the usual tolls for the residue. But the corporation assumed to abandon the repair and maintenance of a further portion of the road, and, the more effectually to relieve itself, made the sale. This was done six years prior to the institution of the proceeding for forfeiture.

The defenses interposed by the corporation were that the lapse of six years was a bar to the filing of the information, and that under one of the sections of its charter it had the right to make the sale which was the basis of the action. Both defenses were found against the corporation, and the forfeiture of its franchise was adjudged.

We think the interpretation of the opinion of this case given by Mr. Waterman in section 427 of his work already referred to is correct. It is in these words: "It

State, ex rel., v. Telephone & Telegraph Co.

was held that as it [the sale] was a willful, deliberate act, putting it out of the power of the corporation to perform its duty in the future, and a continued purpose and plan to escape a plain duty, and to throw off the burden of furnishing the consideration for which the franchise was granted, the charter must be declared forfeited."

Thus interpreted, the case is not out of line with the authorities referred to. For it is everywhere conceded that if a corporation commits an act of misfeasance or nonfeasance going to the very purpose of its existence and seriously affecting the public, and flagrantly persists in the wrongful act, a court will not hesitate to visit it with a judgment of ouster.

Other authorities are referred to by the counsel of appellants in support of the contention that the court has no discretion in a case of this sort, but each one of these furnishes its own limitaton, which deprives it of controlling weight in the determination of this question.

We think not only has the court discretion to look to the public weal in refusing or granting a judgment of forfeiture when invoked against a corporation, but it will not be awarded unless the act complained of has been a wrongful or willful abuse of corporate rights or duties. This wise qualification of the law of forfeiture we understand to be well settled by authority. Mr. Waterman, at section 427, vol. 2 of his work already cited, says: "To constitute a forfeiture, there must have been wrongful abuse or improper neglect; some-

thing more than accidental negligence, excess of power or mere mistake in the mode of exercising an acknowledged power." In Wood's Field on the Law of Corporations, section 414, the text is as follows: "To warrant a judgment of forfeiture against a corporation on the ground of neglect or abuse of corporate powers, such neglect must be more than the result of mere omission to use certain powers possessed, or mere accident, and such abuse must be wrongful and not the result of mistake."

"It is not every failure to perform the duty imposed upon a corporation that will work a forfeiture of its franchise. There must be some plain abuse of power by which the corporation fails to fulfill the design and purpose of its organization, and the acts of misuser or nonuser must relate to matters which are of the essence of the contract between the State and the corporation, and they must be wrongful and repeated. There must be something more than accidental negligence, or excess of power, or mere mistake in the mode of exercising it."

With these authors, and Wood on Railroads, vol. 3, section 499, on this point, many cases are in accord. *State of Wisconsin* v. *Jamesville Water Power* (Wis.), 66 N. W., 512, 32 L. R. A., 391; *People* v. *Bristol, etc., T. P. C.,* 23 Wend., 222; *Atty-Gen.* v. *Erie, etc., R. R. Co.,* 55 Mich., 15, 20 N. W., 696; *State* v. *Rio Grande R. R. Co.,* 41 Tex., 217; *Central, etc., Co.* v. *People,* 5 Colo., 39.

This view met with the approval of this court in

*State* v. *Merchants Ins. & Trust Co.*, 8 Humph., 235, though in the form of a dictum; and later in *State* v. *Columbia, etc., Turnpike Co.*, 2 Sneed, 254, where the point, as we understand the opinion was directly involved. However, in *State* v. *Nonconnah Turnpike Co.*, 1 Shannon's Tenn. Cas., 511, these cases were criticised, and their authority repudiated—the first, on the ground that the question was not involved; and the second, because the statute upon which the proceeding was founded was not indicated in the opinion.

In the *Nonconnah* case it will be seen there had been a flagrant disregard of corporate duties. The company had failed to complete its road within the time given by the original and amendatory acts, and when completed, as claimed by it, the levee across a wide creek bottom, on which the turnpike was laid, was so low that for months it was covered by water, and, when not so, was so muddy and ill constructed that travelers found it impassable, and yet the corporation was asserting the right to collect toll. The violation of the express obligations in these respects imposed upon the corporation by its charter, going, as they did, to the very end and purpose of its existence, and at the same time oppressive to the public, constituted an offense not to be condoned by subsequent good behavior, and justly merited a judgment of forfeiture. On this principle, sustained by the authorities, that case could be rested, and we are satisfied that the argument and conclusion of the court were

114 Tenn—14

directed to these acts flagrantly violative of corporate duty, though the opinion contains expressions and argument which extend much beyond. Limited to such acts, the case would not be out of line with those earlier cases in our reports which are criticised, nor with the principle which we have heretofore in this opinion announced as being sound in reason and supported by the best authorities. If, however, it is to be understood as being in conflict with this principle, we are not disposed to regard it as controlling in this case.

Now, in view of what has been said, and in the light of the rules extracted from both text-books and reports of courts of the highest standing, we think it clear that the relators are not entitled to invoke the harsh remedy of forfeiture because of the defendant's honest but abortive effort to comply with the law in the registry of an abstract of its charter in the counties of the State in which it did business.

It is next insisted that forfeiture should be adjudged because, after a fierce competitive war with telephone companies in Murfreesboro and Clarksville, which were essentially local, as the result of which these companies were driven to the wall, the Cumberland Telegraph & Telephone Company bought properties and became the sole possessor of the telephone business in these two communities.

We know of no law which will protect the weak against the strong in the war of rates. The inevitable result of such strife, if long continued, must be that the

former will be compelled to yield to the ampler capital
of the latter.   This occurred in the two cases referred
to.   Realizing, as these weaker corporations must have
done, that the utter destruction of all their interests
would follow continued conflict, they sold out their
properties to the defendant company.   This sale and
purchase were made under the authority of chapter 198,
page 329, of the Acts of 1887.   That the purchase was
made by the stronger company to end a ruinous war of
rates and avoid further competition in these particular
localities, the transaction being warranted by the act in
question, did not make the acquisition of these proper-
ties any less legal.

The right to judgment of forfeiture is further rested
on the ground that the defendant company leased its
plant in the city of Columbia to one Leland Hume for
the term of one year, with the privilege of continuance
until the lease was terminated by a thirty-days notice
given by either of the parties to the contract.   What-
ever may have been the motives which induced the mak-
ing of the lease, it has been long since avoided as an
*ultra vires* act; why, then, should it now be made a pred-
icate for a decree of forfeiture?   Concede that this was
an abandonment, unauthorized by law, of its corporate
duties in that one locality for the period indicated
above; still it has long since resumed control of its
property, and is, and has been for years, serving that
community.   What public interest, then, is to be sub-

served at this late day in making this act the ground for a decree of ouster from the State?

To the claim that the relators are entitled to such a decree, we think may properly be applied the argument and authorities hereinbefore addressed to the first ground urged for forfeiture. To grant the decree asked for by them would work great confusion, for the time being at least, throughout the State, without corresponding benefit. The telephone, with its local and intrastate connections, has become one of the most important agencies of social and commercial life, the loss of which would be keenly felt, possibly in every neighborhood of the State. Under these conditions we think it the duty of the court, in the exercise of a sound discretion, to decline to apply the remedy asked for by these relators. Upon the whole case we are satisfied with the decree of the court of chancery appeals dismissing the bill, and it is affirmed.