WESTERN UNION TELEGRAPH CO., AND IRVINE HALL *v.*
W. G. BYRD.*

(*Nashville*, December Term, 1926.)

Opinion filed June 11, 1927.

**WORKMEN'S COMPENSATION ACT.** Telegraph company not a
common carrier, within meaning of act.

An employer of a telegraph company complying with provisions
of the Act, for an injury grounded on negligence cannot maintain
an action at law; because such company, is not a common carrier,
excluded from the Workmen's Compensation Act. (Post, p. 455.)

Citing: Workmen's Compensation Acts 1919, ch. 123, sec. 6 (a);
Scott v. Nashville Bridge Co., 143 Tenn., 86; Bristol Telephone
Co. v. Weaver, 146 Tenn., 511; Marr v. Telegraph Co., 85 Tenn.,
533; 37 Cyc., p. 1611, 26 R. C. L., 487; Jones on Tel. & Tel. Com-
panies, (2 ed.), p. 25; Tel. Co. v. Mellon, 96 Tenn., 66; 100 Tenn.,
429.

Citing and distinguishing: State, ex rel. v. Telephone and Tele-
graph Co., 114 Tenn., 194; Vaught v. Telephone Co., 123 Tenn.,
318; State of Missouri v. Bell Telephone Co., 23 Fed., 539; Dele-
ware Tel. & Tel. Co. v. Deleware, 50 Fed. 677; Moss v. Bettis,
51 Tenn., 665; Telephone Co. v. Tel. & Tel. Co., 125 Tenn., 273;
Postal Telegraph Co. v. Cumberland Tel. Co., 127 Fed., 726; Acts
Extra Session 1885, ch. 68.

---

*Headnote 1.   Workmen's Compensation Acts, C. J., Section 31
(Anno).

---

**FROM MAURY.**

---

Appeal from the Circuit Court of Maury County.—
HON. THOS. B. LYTLE, Chancellor, sitting by interchange.

FRANCIS R. STARK, BASS, BERRY & SIMS and J. B. GAR-
NER, for appellant.

HUGHES, HATCHER & HUGHES, for appellee.

MR. JUSTICE COOK delivered the opinion of the Court.

The defendant in error, an employee of the Western Union Telegraph Company, was awarded damages after refusal of the company to plead over when its demurrer was overruled. The appeal presents the inquiry of whether the company is a common carrier, excluded from the operation of the Workmen's Compensation Act. The record shows that the company owned a line running parallel with the Nashville, Chattanooga & St. Louis Railway, over which it transmitted messages to and from other States and carried on an interstate business.

The relocation of a portion of the railroad track near McEwen, Tennessee, required the removal and relocation of a short stretch of the telegraph line, and wires were temporarily strung across the new segment on improvised fastenings until permanent poles could be set. While at work on this reconstruction, W. G. Byrd, the employee, was directed by the foreman in charge of the crew of the Western Union Telegraph Company, the employer, to remove wires from a temporary pole, insecurely set, which fell and injured him. For the injury he sued in an action, grounded on negligence, as at common law. His right to maintain the action was challenged by the demurrer because the declaration shows that the Western Union Telegraph Company had complied with the provisions of the Workmen's Compensation Act, and the injury complained of arose out of, and in the course of Byrd's employment, and was compensible under the Workmen's Compensation Law, chapter 123, Acts of 1919, which excludes other remedies. *Scott* v. *Nashville*

*Bridge Co.,* 143 Tenn., 86.; *Bristol Telephone Co.* v. *Weaver,* 146 Tenn., 511.

Section 6 of the Compensation Act provides:

"That this Act shall not apply to:—

" (a) Any common carrier doing an interstate business while engaged in Interstate Commerce."

The defendant in error denied the application of the Compensation Act, insisting that the company is a common carrier engaged in Interstate Commerce, and was doing an interstate business at the time of the injury, and that under the foregoing provision the Telegraph Company is excluded from the operation of the Workmen's Compensation Act.

Bare words are not always adequate to apply accepted principles to new and unusual conditions. Comparison and analogy are sometimes required. The infirmity of words to convey thought and the value of comparison to aid them was recognized by the court in *Marr* v. *Telegraph Co.,* 85 Tenn., 533, where it is said:

"The science of telegraphy is of such recent discovery that the courts have had some difficulty in settling upon the principles of law applicable to the regulation of Telegraph Companies to the public."

In *State ex rel.* v. *Telephone & Telegraph Company,* 114 Tenn., 194, a case involving the charge of abuse of corporate power by discrimination against patrons, the court characterized a telephone company as a common carrier of news touched with a public use.

In *Vaught* v. *Telephone Company,* 123 Tenn., 318, an action to enforce a penalty for discrimination contrary to Chapter 66, Acts Extra Session 1885, the court quoted from *State of Missouri* v. *Bell Telephone Company,* 23 Fed., 539, and *Delaware Tel. & Tel. Co.* v. *Delaware,* 50 Fed., 677.

the first quotation the court said:

ι telephone system is simply a system for the transmission of intelligence and news. It is, perhaps, in a limited sense, and yet in a strict sense, a common carrier. It must be equal in its dealings with all."

The second quotation is:

"It is no longer open to question that telephone and telegraph companies are subject to the rules governing common carriers and others engaged in like public employment."

After quoting as above and discussing the status of telephone companies as *quasi*-public corporations, and referring to the relative rights of the company and public, the court proceeded:

"As has been seen, the courts recognize that telephone and telegraph companies are in a strict sense common carriers, and, as to their privileges and liabilities, classify them with railroads and express companies."

The language of the opinions from which the court quoted was used to apply settled principles of law to the obligations of these more recent public service corporations, or as they are now designated, public utilities, and the words were used without apparent intent to declare either telephone or telegraph companies common carrier as that term is commonly understood and used. That is to say, those who undertake generally to transport goods. *Moss* v. *Bettis,* 4 Heisk., 665.

In *Telephone Company* v. *Tel. & Tel. Company,* 125 Tenn., 273, the bill was filed under chapter 66, Acts Extra Session 1885, to compel a physical connection between the two companies and to require the defendant company to supply telephone facilities without discrimination. In discussing the application of the Statute the court said telephone and telegraph companies are com-

mon carriers of intelligence and must give the same service on the same terms to all who apply therefor without partiality or unreasonable discrimination, but held that the duty was only owing to individual patrons, and could not be enforced by a competing corporation.

In these cases the courts were discussing the duties of this character of *quasi*-public corporations, and the power of the State to enforce reasonable regulations for public convenience, and known principles were applied to these more recent public utilities, by comparing them to common carriers, as subjects of regulation owing the duty to give fair and undiscriminating public service.

The Federal Courts used the comparison in cases involving the duty of such companies to render impartial service to the public, but in *Postal Cable Tel. Co. v. Cumberland Tel. Co.*, 177 Fed., 726, Judge SANFORD avoided the incongruity of giving to them the direct definition of common carriers. In referring to these communicants of messages he likened them to common carriers by saying "a telephone company, which is often described as a common carrier of news, is engaged in a *quasi*-public service affected with a public interest." Thus making the application for the use intended without more.

The Federal Statutes to regulate Interstate Commerce indicate no purpose to declare these agencies which do more than receive and send messages, common carriers. For in classifying telephone, telegraph, and cable companies as subjects of regulation under the Act they are not declared common carriers. The Act declares that they shall be considered and held common carriers within the meaning and purpose of the Act intended to regulate Interstate Commerce.

While the plaintiff in error, Western Union Telegraph Company, is engaged in Interstate Commerce, and is a

public service company or public utility, subject to regulation under the Interstate Commerce law, it is not a common carrier according to the meaning and intention expressed in Section 6-a of the Workmen's Compensation Act.

In accordance with this conclusion we quote from 37 Cyc., page 1611, as follows:

"Telegraph and telephone companies have frequently been termed 'common carriers,' or common carriers of news or information, and in some jurisdictions have been declared to be common carriers by constitutional or statutory provisions; but while they are in the nature of common carriers in regard to their *quasi*-public character, and their duty to serve the public generally and without discrimination, and in being subject to legislative regulation and control, they are not strictly speaking common carriers, and their obligations and liabilities are not to be measured by the same rules as are applicable to common carriers of goods."

In substantial accord with this statement of the text in Cyc. is that found in 26 R. C. L., page 487, and also in Jones on Telephone & Telegraph Companies (2 Ed.), page 25, et seq. *Marr* v. *Western Union Tel. Co.*, 85 Tenn., 529; *Telegraph Co.* v. *Mumford*, 87 Tenn., 190; *Telegraph Co.* v. *Mellon*, 96 Tenn., 66; 100 Tenn., 429.

The result being dependent upon whether the plaintiff in error is a common carrier within the meaning of Section 6-a, of the Compensation Act, and our conclusion being that it is not, it follows that the demurrer should have been sustained, and the suit dismissed. Such will be the judgment of this court.