DELAWARE & A. TELEGRAPH & TELEPHONE CO. *v.* STATE OF DELAWARE *ex rel.* POSTAL TELEGRAPH-CABLE CO.

*(Circuit Court of Appeals, Third Circuit.   April 21, 1892.)*

No. 3.

1. TELEPHONE COMPANIES—COMMON CARRIERS—DUTY TO FURNISH EQUAL FACILITIES.
   Telephone companies are subject to the rules governing common carriers, and are bound to furnish equal facilities to all persons or corporations belonging to the classes which they undertake to serve.
2. SAME—USE OF PATENTED INSTRUMENTS.
   They are not exempt from this obligation by the fact that the instruments by which their business is carried on are patented; for while a patentee has a perfect title to the thing patented, and its use, and is not bound to apply it to a public use, yet when he does so he is bound by the rules governing such use.
3. SAME—LICENSE—MONOPOLIES—TRANSMISSION OF TELEGRAPHIC MESSAGES.
   A Delaware telephone company, which furnishes facilities to the Western Union Telegraph Company for the transmission of telegraphic messages, cannot be excused from furnishing like facilities to other telegraph companies because its license to use the telephones is expressly subject to an exclusive license in favor of the Western Union Company for the transmission of telegraphic messages; for such exclusive license creates a monopoly, and is void under the Delaware law.

Error to the Circuit Court of the United States for the District of Delaware.

Petition by the Postal Telegraph-Cable Company for a writ of *mandamus* to compel the Delaware & Atlantic Telegraph & Telephone Company to place a telephone transmitter and receiver in the office of relator on the same terms as are given to other subscribers. The petition was originally brought in the superior court of the state of Delaware, for New Castle county, and was removed therefrom to the court below, which awarded the writ as prayed.   See 47 Fed. Rep. 633.   Respondent brings error.   Affirmed.

*Charles L. Buckingham* and *Edward G. Bradford,* for plaintiff in error.

*R. S. Guernsey* and *George H. Bates,* for defendant in error.

Before ACHESON, Circuit Judge, and BUTLER and GREEN, District Judges.

BUTLER, District Judge. There is no controversy about the facts of this case. The relator owns and operates a telegraph system with lines extending throughout the country, having its principal office in the city of Wilmington. The respondent owns and operates a telephone exchange in Wilmington connected with the places of business and residences of subscribers, to whom telephonic facilities are furnished. One of the subscribers enjoying such facilities is the Western Union. Telegraph Company. The relator, desiring similar facilities, on the 20th of November, 1889, applied to the respondent for connection with its exchange, and the application was refused. The proofs show that up to November 10, 1879, the National Bell Telephone Company and the Western Union Telegraph Company were owners of rival telephone patents, about which they had been engaged in litigation. At that date they entered into a contract by virtue of which the former company became owner of the patents previously held by the latter, and the latter company acquired an exclusive license to use the telephone for transmitting telegraphic messages under all the patents for a term of 17 years. Subsequently the patents were assigned, subject to this license, to the American Bell Telephone Company. All licenses, including the respondent's, subsequently granted under the patents have been made subject to that of the Western Union Telegraph Company.

It is no longer open to question that telephone and telegraph companies are subject to the rules governing common carriers and others engaged in like public employment. This has been so frequently decided that the point must be regarded as settled. While it has not been directly before the supreme court of the United States, cases in which it has been so determined are cited approvingly by that court in *Budd* v. *New York,* 143 U. S. 517, 12 Sup. Ct. Rep. 468. While such companies are not required to extend their facilities beyond such reasonable limits as they prescribe for themselves, they cannot discriminate between individuals of classes which they undertake to serve. As common carriers of merchandise may prescribe the points between which they will carry and the description of goods they will accept, so, doubtless, may carriers of messages limit their business and obligations. If, therefore, the respondent had confined the use of its telephonic facilities to the carriage of personal messages for individuals, excluding those of telegraph companies and others who forward messages for hire, the relator would, probably, have no just ground of complaint. As we have seen, however, it did not so limit its business, but carried telegraphic messages, as well as others. The respondent contends, however, that this was not its voluntary act; that the Western Union Telegraph Company had acquired rights superior to its own, and that it could not, therefore, ex-

clude this company from the use of its facilities. This position cannot be sustained. The admission of the Western Union Telegraph Company to its system was the respondent's voluntary act. Such admission could only be obtained by its express consent. To say that its license required such admission does not help the respondent. It voluntarily accepted the license and assented to its terms. Nor does it help the respondent to say that the license could not be obtained on other terms. If not, it could have been declined. Had it been, and the business avoided, the responsibilities which attend it would also have been avoided. Accepting the license, however, as the respondent did, and engaging in the carriage of messages, it cannot escape the public duties which attend the employment. It must carry for all persons belonging to the classes it undertakes to accommodate. Its alleged responsibility to the licensor for so carrying impartially affords no excuse. The responsibility was improperly assumed, if it exists. But it does not exist. The object of the stipulation out of which it is supposed to arise, as well as that of the contract in which it originated, between the Western Union Telegraph Company and the National Bell Telephone Company, was to accomplish a result which the law forbids. In other words it was to effect precisely what has occurred,—the establishment of a system of telephone lines and exchanges to carry telegraphic messages, as well as others, which should be so conducted as to confer a monopoly on one telegraph company. Had the owner of the patents come to Delaware and undertaken to do what has been done, it can scarcely be questioned that its act would have been unlawful. And yet this is substantially what has occurred. The owner has effected it through the instrumentality of a license. The respondent has simply done what the owner authorized and required.

It is urged, however, that the Western Union Telegraph Company is not a mere licensee of the National Bell Telephone Company, but something more; that prior to its contract with that company it was the exclusive owner of certain patents under which it might have applied the telephone to its own exclusive use in carrying telegraphic messages; that the effect of its contract was to leave its right to do this unimpaired; and that its subsequent arrangement with the respondent for carrying its messages is simply the exercise of this right, of which no one can justly complain. This statement is defective in several particulars. *First*, it is not true that the Western Union Telegraph Company was originally the owner of patents which enabled it to apply the telephone to its use. Its patents, as conceded on the argument, were mainly, if not exclusively, for improvements on the Bell invention, which could not be used without license from the National Bell Telephone Company. *Second*, it parted absolutely with these patents and took a license, not under them alone, but also under the former patents of the National Bell Telephone Company. It is therefore a licensee and nothing more. But this fact that it is simply a licensee is not of essential importance. The difficulty encountered does not arise out of it, but out of the circumstance that the Western Union Telegraph Company did not employ its rights in the

manner above indicated. Had it done so, and thus kept its interest and business distinct and separate from that of subsequent licensees by establishing its own system of lines and exchanges and confining such subsequent licensees to the transmission of individual messages, this controversy might not, and doubtless would not, have arisen. Instead, however,—and no doubt to avoid the expense attending it which would possibly have rendered the scheme impracticable —the Western Union Telegraph Company sought through the means devised and employed to secure an advantage over other similar companies, by obtaining a monopoly in the systems and business of such licensees. In other words, it contracted with these licensees to carry its messages to the exclusion of all similar messages of others. This, as we have seen, the licensees could not lawfully do; and consequently, as before stated, the contracts by which it was sought to be accomplished are void.

The respondent supposes importance is attributable to the fact that the telephone is protected by patent, and cites *American Rapid Tel. Co.* v. *Connecticut Tel. Co.*, 49 Conn. 352, 372, in which it is said:

"The plaintiff insists that the defendant has offered its services to the public as a common carrier of articulate speech; that it has thereby made itself the servant of the public and has subjected itself to the operation of the general law which compels all such servants to serve applicants impartially, regardless of the limitations placed upon its use of the instruments. But the property of the American Bell Telephone Company in its patents is absolute and exclusive; it can rent or sell it in whole or in part; it can refuse to make or use, or to allow any one else to make or use, the telephone described in it; or it can make and sell one and no more, and put such restrictions as it pleases upon the time, place, and manner of using that; and it was the privilege of the Connecticut Telephone Company to purchase from it even the most limited right to use one or more of its instruments, and it is not within the power of the court either to enlarge or diminish the purchase."

This statement is mainly correct, but the deductions drawn from it— that one engaged in the business of carrying messages who employs the telephone as a means of conveyance is exempt from the operation of the rules which govern common carriers and others engaged in like public employment—we cannot adopt. Where one engages in such public business it is of no consequence whether the means or instruments whereby it is conducted are patented or not. It is the *business* that is regulated. A patent secures title to the thing patented and its use, just as the law secures title to other descriptions of property. The owner need not apply his property of either description to such public employment, but if he does, the employment itself will be subject to the rules which the law has prescribed for its government, without respect to the means or instrument by which it is conducted.

We do not regard the *Express Cases*, 117 U. S. 1, 6 Sup. Ct. Rep. 542, 628, cited by the respondent, as applicable here. On the facts they are distinguishable from this case; and the exception which they establish to the general rules governing common carriers is not likely to be enlarged. The history of these cases, the division of the court over them, and the opinions of the sev-

eral circuit courts in which they originated, do not, we think, leave this in doubt.

It would be unprofitable to extend the discussion. The decisions of the several state courts in cases involving the same questions, and their citation with approval by the supreme court of the United States, are virtually conclusive. See *Chesapeake & P. Tel. Co.* v. *Baltimore & O. Tel. Co.,* 66 Md. 399, 7 Atl. Rep. 809; *State of Missouri* v. *Bell Telephone Co.,* 23 Fed. Rep. 539; *State of Ohio* v. *Bell Telephone Co.,* 36 Ohio St. 296; *State* v. *Bell Telephone Co.,* 22 Alb. Law J. 363; *Commercial Union Tel. Co.* v. *New England Telephone & Telegraph Co.,* 61 Vt. 241, 17 Atl., Rep. 1071; *Louisville Transfer Co.* v. *American Dist. Tel. Co.,* 1 Ky. Law J. 144; *Central Union Telephone Co.* v. *State,* 118 Ind. 194, 19 N. E. Rep. 604; *Budd* v. *New York, supra.*

The judgment of the circuit court is affirmed.