### IN THE

# SUPREME COURT OF TENNESSEE

### FOR THE

### EASTERN DIVISION.

---

## KNOXVILLE, SEPTEMBER TERM, 1910.

---

J. H. VAUGHT *v.* EAST TENNESSEE TELEPHONE COMPANY
and THOMAS *v.* EAST TENNESSEE TELEPHONE COM-
PANY.

### (*Knoxville.* September Term, 1910.)

1. **TELEPHONES. Telephone Corporations are quasi public cor-
porations and bound to serve the public without discrimination.**
A corporation engaged in the general telephone business is a
quasi public corporation, and as such is bound, under Acts
1885, ch. 66, sec. 11, and independently of it at common law, to
serve the public without partiality or discrimination. (*Post,
pp.* 320-322, 325, 327.)

Acts cited and construed: Acts 1885, ch. 66, sec. 11.

Cases cited and approved: Missouri v. Telephone Co., (C. C.), 23
Fed. 539; Telegraph and Telephone Co. v. Deleware, 50 Fed.
677, and 2 C. C. A., 1; Budd v. New York, 143 U. S., 517;
Telegraph & Telephone Co. v. Kelly, 160 Fed., 316, 87 C. C. A.,
268.

Vaught v. Telephone Co.

2. CORPORATIONS. Statutes prohibiting discrimination in public service are declaratory of the common law. .

It is well settled that statutes providing against discrimination by corporations affected by public use are simply declaratory of the common law. (*Post, pp.* 322, 325.)

Cases cited and approved: Telegraph & Telephone Co., v. Kelly, 160 Fed., 316, 87 C. C. A., 268; Telephone Co. v. Fehring, 146 Ind., 189; State v. Telephone Co., 17 Neb., 126; State v. Telephone Co., 61 S. C., 83; State v. Telephone Co., 36 Ohio St., 296.

3. TELEPHONES. Exaction of advance payment from some patrons and extensions of credit to others is not illegal discrimination subjecting the company to the statutory penalty.

A telephone company having agreed to furnish a prospective patron a telephone in his home, and declining to install it until he paid three months' rental in advance, in accordance with its general rule, is not guilty of discrimination, and chargeable with the penalty prescribed in Acts 1885, ch. 66, sec. 11, upon the ground that the said general rule under which such requirement or exaction was made was not uniformly enforced against those seeking to become patrons; for such a corporation can extend credit, for service rendered, to one or more of its patrons, and exact payment in advance from others, without being guilty of illegal discrimination among its patrons. (*Post, pp.* 322-328.)

Acts cited and construed: Acts 1885, ch. 66, sec. 11.

Cases cited and approved: Oregon Short Line v. Northern Pacific (C. C.), 51 Fed., 472; Same Case (C. C. A.), 61 Fed., 159, and 9 C. C. A., 409; Little Rock v. St. Louis, 63 Fed., 777, 11 C. A., 419; Railroad v. Steamship Co., 86 Fed., 407, 30 C. C. A., 142; Telegraph & Telephone Co. v. Kelly, 160 Fed., 316, 87 C. C. A., 268; Yancey v. Telephone Co., 81 Ark. 491.

4. CONSTITUTIONAL LAW. Question of constitutionality of the infliction of the penalty by Acts 1885, ch. 66, sec. 11, is reserved.

Vaught v. Telephone Co.

The question whether the statute (Acts 1885, ch. 66, sec. 11), in so far as it inflicts a penalty of one hundred dollars per day as long as the discrimination denounced by it continues, violates the constitutional provision (art. 1, sec. 21) against taking property without compensation, is reserved and not determined. (*Post, p.* 328.)

Acts cited and construed: Acts 1885, ch. 66, sec. 11.

Constitution cited and construed: Art. 1, sec. 21.

---

## FROM HAMILTON.

---

Appeal in error from the Circuit Court of Hamilton County. M. M. ALLISON Judge.

J. W. EASTMAN and JEPTHA BRIGHT, for Vaught and Thomas.

WATKINS & THOMPSON, for Telephone Co.·

---

MR. JUSTICE BEARD delivered the opinion of the Court.

This suit was brought by the plaintiff in error to recover from the defendant in error the statutory penalty of $100 per day provided in section 11, c. 66, of the Session Acts of the general assembly of this State of the year 1885, upon the alleged ground that, in violation of the terms of the statute, the defendant in error, having agreed to furnish him a telephone in his home, declined to install it until he paid three months' rental in advance, and that this exaction was a "discrimina-

tion" against him, inasmuch as the general rule of the defendant in error, under which the exaction was made, was not uniformly enforced against those seeking to become patrons of the defendant in error.

The East Tennessee Telephone Company is a duly organized corporation, with a situs in the city of Chattanooga, engaged, as its name would imply, in a general telephone business. This being so, it is well settled that it is a quasi public corporation, and as such bound, under the statute in question, and independently of it at common law, to serve the public without partiality or discrimination. In the case of *State of Missouri* v. *Bell Telephone Company* (C. C.), 23 Fed., 539, Brewer, J., said: "A telephone system is simply a system for the transmission of intelligence and news. It is, perhaps, in a limited sense, and yet in a strict sense, a common carrier. It must be equal in its dealings with all. It may not say to the lawyers of St. Louis, 'My license is to establish a telephone system open to the doctors and merchants, but shutting out you gentlemen of the bar.' The moment it establishes a telephonic system here, it is bound to deal equally with all citizens in every department of business; and the moment it opened its telephonic system to one telegram company, that moment it put itself in a position where it was bound to open its system to any other telegraph company tendering equal pay or equal service." In keeping with this, in *Delaware & A. Tel. & Tel. Co.* v. *Delaware,* 50

Fed., 677, 2 C. C. A., 1, it was said: "It is no longer open to question that telephone and telegraph companies are subject to the rules governing common carriers and others engaged in like public employment. This has been so frequently decided, that the point must be regarded as settled. While it has not been directly before the supreme court of the United States, cases in which it has been so determined are cited approvingly by that court in *Budd* v. *New York,* 143 U. S., 517, 12 Sup. Ct., 468, 36 L. Ed., 247. While such companies are not required to extend their facilities beyond such reasonable limits as they may prescribe for themselves, they cannot discriminate between individuals of classes which they undertake to serve."

It is equally well settled that statutes providing against discrimination by corporations affected by public use are simply declaratory of the common law. *Central Union Tel. Co.* v. *Fehring,* 146 Ind., 189, 45 N. E., 64; *State* v. *Nebraska Tel. Co.,* 17 Neb., 126, 22 N. W., 237, 52 Am. Rep., 404; *State* v. *Citizens' Telephone Co.,* 61 S. C., 83, 39 S. E., 257, 55 L. R. A., 139, 85 Am. St. Rep.. 870; *State* v. *Bell Tel. Co.,* 36 Ohio St., 296, 38 Am. Rep.. 585; *Cumberland Tel. & Tel. Co.* v. *Kelly,* 160 Fed., 316, 87 C. C. A., 268.

Upon examining the statute in question, it will be found that it grants privileges to telephone and telegraph companies, and prohibits in general terms "discrimination among patrons," leaving to the courts to determine in each particular instance whether illegal

"discrimination" has been made. Inasmuch as this is but a statutory declaration of a principle of the common law, applied alike to all quasi public corporations, it is necessary to refer to the authorities dealing with the question to ascertain whether, without a violation of this principle, such a corporation can extend credit, for service rendered, to one or more of its patrons, and exact payment in advance from others.

Before going to the authorities, it is not improper to observe that it would be difficult to give any sound reason why a privilege enjoyed by individuals and all private corporations should be forbidden to a common carrier of freight or passengers, or in fact to any other quasi public corporation. In private enterprises the necessities of business require the exercise of a prudent discrimination between those who are and those not entitled to an extension of credit, and a rule so essential to the successful conduct of these, it would seem, should be accorded to those, though engaged in serving the public, who are seeking returns on their labor and capital invested.

As has been seen, the courts recognize that telephone and telegraph companies are in a strict sense common carriers, and, as to their privileges and liabilities, classify them with railroads and express companies. One of the common-law rights or privileges of these companies is that of requiring payment of carrying charges from any one or more of its customers at will. This right or privilege, it is well understood, is not within

the inhibition of the interstate commerce law, providing against discrimination. In *Oregon Short Line* v. *Northern Pacific* (C. C.), 51 Fed., 472, Field, J., says: "A railroad corporation, like any other common carrier, has a right to demand that its charges for transporting goods shall be paid in advance, and is under no obligations to receive goods for transportation unless such charges are paid, if demanded." This case was affirmed by the court of appeals of the Ninth circuit, and is reported in 61 Fed., 159, 9 C. C. A., 409.

While the exact question here presented was not at issue in the case just referred to, yet the principle there announced is applied in other cases involving the question as to the right of a common carrier to discriminate between its customers in the matter of extending credit or demanding payment in advance. In *Little Rock* v. *St. Louis,* 63 Fed., 777, 11 C. C. A., 419, the court, speaking through Thayer, Justice, said: "In view of the fact that all persons and corporations are entitled, at common law, to determine for themselves, and on considerations that are satisfactory to themselves, to whom they will render service on credit, we are not prepared to hold that an interstate carrier subjects another carrier to an unreasonable or undue disadvantage, because it exacts of that carrier the prepayment of freight received from other individuals and corporations at such stations."

In *Gulf City R. R. Co.* v. *Miami Steamship Co.,* 86 Fed., 407, 30 C. C. A., 142, the court said: "A common

carrier engaged in interstate commerce may, at common law and under the interstate commerce law, demand prepayment of freight charges when delivered to it by one connecting carrier, without exacting such prepayment when delivered by another connecting carrier."

In *Cumberland Telephone Co.* v. *Kelly*, 160 Fed., 316, 87 C. C. A., 268, where was involved the question of discrimination under the statute in question, it is said: "Neither is there anything in the Tennessee statute, set out heretofore, which adds anything to the common-law obligation of such companies. A new remedy is given, and severe penalties for nonobservance are imposed; but the statute is directed only against discrimination. . . . These conclusions support the proposition, stated above, that the act of 1885 is only declaratory of the common-law duty not to discriminate, and enforcing that obligation by penalty."

The supreme court of Arkansas, in *Yancey* v. *Batesville Tel. Co.*, 81 Ark., 491, 99 S. W., 681, construing a statute similar to ours, uses this language: "Every company is entitled to compensation for telephone facilities furnished by it. It may require charges for such services to be paid in advance. *Hewlett* v. *W. U. Telegraph Co.* [C. C.], 28 Fed., 181; Jones on Telegraph and Telephone Companies, sec. 431; Croswell on the Law Relating to Electricity, sec. 371, and cases cited. This power is given for its own protection. In the exercise of it, it may extend credit for such charges to persons it may deem deserving. This is a reasonable exercise of the power, and is essential to its success. No rule

can be laid down by which the credit to which one person is entitled can be determined. This is dependent upon various circumstances, such as the amount of property he may have over and above his exemptions and liabilities, his promptness in paying his debts, his being contentious, a wrangler, or faultfinder, his honesty, integrity, and other qualities. The credit due each individual depends upon himself. It cannot be fixed by any rule, but must be, and is, left to the company to determine. The statute forbidding discriminations does not deny the right. It does not come within the evils the statute was intended to suppress. All are required to pay the same rates for the same service in like situation. But the time when it should be paid is within the peculiar province of the company to determine. This is a right of creditors, and there is no reason why it should be denied to telephone companies."

Mr. Hutchinson, in his work on Carriers (3d Ed., vol. 2, sec. 567), states the law as follows: "At common law, a railroad corporation has the right to require the payment of freight charges by all of its customers, or some of them, as they may think best. It has the same right as any other individual or corporation to exact payment for such a service before it is rendered, or to extend credit. This common-law right of requiring payment in advance of some customers and of extending credit to others has not been taken away by the interstate commerce act (Act Feb. 4, 1887, c. 104, 24 Stat., 379 [U. S. Comp. St. 1901, p. 3154]); nor

does any interstate carrier subject another to an unrea-
sonable or undue disadvantage because it exacts of that
carrier the payment of freight for property received by
it at a given station, while it does not require charges
to be paid in advance of freight received from other in-
dividuals and corporations at such station."

We are entirely satisfied with the soundness of the
rule, as well as with the reasons underlying it, an-
nounced by the several courts and Mr. Hutchinson, and
are unable to agree with the contention of counsel for
plaintiff in error that a telephone company by the char-
acter of its service is to be placed in a different class
from that to which other carrier corporations belong,
in so far as this rule is concerned.   The mere fact, as
is insisted, that it may serve communities restricted
in number and maintain a limited number of exchanges,
can have no bearing on the question.   For it is well
known to all that, while there are such companies with
a limited service, there are others constituting sys-
tems, each one of which cover like a web many States,
whose wires extend into a vast number of communities
and have a patronage greater than any railroad sys-
tem in the country.   That a telephone company, thus
operating, should be excluded from the privilege ac-
corded to the carrier of freight or passengers, would, to
say the least, be remarkable; and, if granted to it, then
it must be equally so to such a company operating in
a less extensive area.

Nor do we agree with counsel in their criticism of
the case of *Yancey* v. *Batesville Tel. Co.,* supra.   The

opinion in that case is in line with the best authorities, and contains, as we think, a sound exposition of the law.

Waiving the question, urged by counsel for the defendant in error, that the statute of 1885, in so far as it provides a penalty of $100 a day aginst a telegraph or telephone company as long as the "discrimination" denounced by it continues, is violative of section 21, art. 1, of our constitution, yet we do not hesitate to say that a claim such as is set up in this litigation, of $36,500, the aggregate of penalties for 365 days, during which it is alleged the defendant in error was guilty of "discrimination" in its refusal to place in the home of the plaintiff in error an instrument, for which, with telephonic service, it was to receive the trifling sum of $2 per month, unless three months rental was paid in advance, is so out of proportion to all possible injury resulting from such refusal—so unconscionable in character—as to stagger a court of law, as much as it would a court of equity; and, if it were held that such a case necessarily fell within the letter of this statute, the court might feel itself forced to answer this question. Finding, however, that the act complained of is not within the tenor of the statute, the issue presented by this insistence is neither examined nor determined.

The judgment of the court below, dismissing the suit, is affirmed.

This disposes also, and in the same manner, of the cases of *Thomas,* Plaintiff in Error, v. *East Tennessee Telephone Company.*