HOME TELEPHONE COMPANY *v.* PEOPLE'S TELEPHONE &
TELEGRAPH COMPANY *et al.*

(*Knoxville.* September Term, 1911.)

1. **CONSTITUTIONAL LAW.** Statutes long treated as constitutional will not be declared unconstitutional except for clearest and most undoubted reasons.

When statutes have been long treated by the courts as constitutional, and important rights have been based thereon, the courts may thereafter refuse to consider the question of their unconstitutionality, and nothing could induce the courts to declare such statutes unconstitutional, except the clearest and most undoubted reasons. (*Post, pp.* 278-280.)

Cases cited and approved: Richardson v. Young, 122 Tenn., 471, 517; Kelly v. State, 123 Tenn., 516, 548; Ferris v. Coover, 11 Cal., 175; Linck v. Litchfield, 141 Ill., 469; Nye v. Foreman, 215 Ill., 285, 288; Rumsey v. People, 19 N. Y., 41, 52-58; Kenney v. Hudspeth, 59 N. J. Law, 504, 532, 533; Terre Haute v. Railroad, 149 Ind., 174, 186; Levin v. United States, 128 Fed. 826, 829, 63 C. C. A., 476.

2. **SAME. Same.** Acts 1885, ch. 66, has been so long treated as constitutional that it will not be now declared unconstitutional.

Acts 1885, ch. 66, has been on our statute books for more than a quarter of a century; and it has been tacitly treated by the courts, the bar, and the people as constitutional, except as to the formality of its passage settled in its favor, and many important and valuable rights have been based thereon, and nothing could induce the supreme court now to declare it unconstitutional, except the clearest and most undoubted reasons. (*Post, pp.* 278-280.)

Acts cited and construed: Acts 1885, ch. 66.

Cases cited and approved: Telegraph Co. v. Nashville, 118 Tenn. 1; Vaught v. Telephone Co., 123 Tenn., 318.

Telephone Co. v. Telephone & Telegraph Co.

3. **SAME. Same. Same. Penalty imposed upon telegraph and telephone companies for refusal to transmit messages, and upon telephone companies for refusal to give applicants connections, does not render statute unconstitutional.**

Acts 1885, ch. 66, whose tenth section requires every telegraph and telephone company, under penalty of five hundred dollars for each and every refusal so to do, to transmit, over its wires to localities on its lines, such messages as may be tendered, at the customary prices, without discrimination, and whose eleventh section requires every telephone company, under penalty of one hundred dollars for each day's refusal, to supply all applicants for telephone connection with facilities without discrimination, upon their compliance with the reasonable regulations of the company, and prohibits the imposition of any restriction, which is not imposed impartially, or any discrimination by requiring that the facilities shall not be used in the business of the applicant, is not unconstitutional in any respect. (*Post, pp.* 277, 278, 280, 281.)

Acts cited and construed: Acts 1885, ch. 66, secs. 10 and 11.

4. **SAME. Same. Same. Same. Statute is not unconstitutional for excessive penalties where cumulative penalties are not recoverable, when.**

The imposition of the penalties stated in the next preceding headnote does not amount to excessive fines or unusual punishments in violation of the constitution (art. 1, sec. 16), because the penalties are not cumulative, and only one penalty for all preceding offenses can be recovered in one suit. (*Post, pp.* 280, 281.)

Acts cited and construed: Acts 1885, ch. 66, secs. 10 and 11.

Case cited and approved: Parks v. Railroad, 13 Lea, 1.

5. **SAME. Same. Same. Same. Same. Statute against discrimination by telegraph and telephone companies is merely declaratory of the common law.**

The statutory provisions stated in the headnote before the next preceding headnote are merely declaratory of the common law

for the purpose of preventing discriminations, with penalties added, and they should be construed in the light of the common law, and its reasons. (*Post, pp.* 281, 282.)

Acts cited and construed: Acts 1885, ch. 66, secs. 10 and 11.

Cases cited and approved: Vaught v. Telephone Co., 123 Tenn., 318; Telephone & Telegraph Co. v. Kelly, 87 C. C. A., 268.

6. **TELEGRAPHS AND TELEPHONES. Common carriers of intelligence, without partiality or discrimination.**

Telephone and telegraph companies are common carriers of intelligence, and must give the same service on the same terms to all who apply therefor, without partiality, or unreasonable discrimination. (*Post, p.* 282.)

Cases cited and approved: Telegraph & Telephone Co. v. Dela ware, 2 C. C. A., 1; Missouri v. Telephone Co. (C. C.), 23 Fed., 539; Telegraph Co. v. Telephone & Telegraph Co. (C. C.), 177 Fed., 726; Telephone Co. v. Telephone Co., 61 Vt., 241; State v. Telephone Co., 17 Neb., 126; Telegraph Co. v. Telegraph Co., 56 Barb. (N. Y.), 46; Telegraph Co. v. State, 118 Ind., 194; Cogdell v. Telegraph Co., 135 N. C., 431; Danaher v. Telegraph & Telephone Co., 94 Ark., 533.

7. **TELEPHONE COMPANIES. One telephone company is not bound to permit another telephone company to make physical connection with its lines and switchboards.**

The rule stated in the next preceding headnote does not mean that a telephone company is bound to permit another telephone company to make a physical connection with its lines and switchboards for the purpose of using them as its own subscribers use them. (*Post, p.* 282.)

8. **SAME. Same. It is neither so bound under the common law, nor under Acts 1885, ch. 66, secs. 10 and 11.**

Neither under the common law, nor under Acts 1885, ch. 66, secs. 10 and 11, is a telephone company bound to permit another telephone company to make a physical connection with its lines

Telephone Co. v. Telephone & Telegraph Co.

and switchboards for the purpose of using them as its own subscribers use them, though doubtless the legislature could enact a law authorizing the condemnation of such a right, under the eminent domain law, upon the payment of just compensation therefor. (*Post, pp.* 282- 283, 286, 287.)

Acts cited and construed: Acts 1885, ch. 66, secs. 10 and 11.

Cases cited and approved: State, ex rel., v. Cadwallader, 172 Ind., 619, 629-636; Telephone Co. v. Telephone Co. (C. C.), 155 Fed., 207.

9. SAME. Each telephone company is independent of all others, save to receive and forward their messages.

Each telephone company is, under the common law, independent of all other telephone companies, save for the duty to receive and forward, to any point on its line, messages received from other telephone companies, and is not bound to accord to any other telephone company or its patrons connection with its switchboards on an equality with its own patrons. (*Post, pp.* 283, 284.)

Case cited and approved: State, ex rel., v. Cadwallader, 172 Ind., 619.

10. SAME. Physical connection with lines and switchboards for an indefinite time may be severed by the owning company without the other's consent.

A physical connection made by one telephone company with the lines and switchboards of another company, under a contract for an indefinite time, or without the specification of any time for it to run, will not prevent the owning company from severing such connections; for the joint concurrence of the companies so in combination is not prerequisite to the severance of such connection. (*Post. pp.* 282-286.)

Case cited and disapproved: State, ex rel., v. Cadwallader, 172 Ind., 619, 640, 641.

11. **SAME. Physical connection given to one company does not confer such right upon other companies.**

A joint traffic arrangement between two telephone companies giving one of them the right of physical connection with lines and switchboards of the other will not confer such right upon other companies not parties to the contract. (*Post, pp.* 284-286.)

Case cited and approved: Railroad v. Railroad, 110 U. S., 667.

Case cited and disapproved: State, ex rel., v. Cadwallader, 172 Ind., 619, 640, 641.

12. **SAME. Same. Such rule would be the taking of property for public use without compensation and without due process of law.**

To give to a contract between two telephone companies for physical connection with the lines and switchboards of one of them, for an indefinite time, the effect of requiring such connection to continue at the will of the connecting company, upon the payment of the toll originally stipulated, would be the taking of property for public use without compensation, and without due process of law. (*Post, pp.* 284, 285.)

Constitution referred to: State const., art. 1, secs. 8 and 21; U. S. const., 5th and 14th ams.

---

### FROM KNOX.

---

Appeal from the Chancery Court of Knox County.— WILL D. WRIGHT, Chancellor.

SHIELDS, CATES & MOUNTCASTLE and POWERS & THORNBURG, for complainant.

LUCKY, FOWLER & ANDREWS, for defendants.

MR. JUSTICE NEIL delivered the opinion of the Court.

The complainant is a telephone corporation having its chief office at Morristown, in Hamblen county, Tenn., with lines running into various surrounding counties. The two defendants are likewise telephone corporations; the first named having its chief office at Knoxville, with lines running through Knox county, and into various other counties; the second named has its chief office at Jefferson city, in Jefferson county, also with outrunning lines.

The complainant prior to the present litigation constructed an extension of its line from Morristown to within one mile of Jefferson city. From the latter point the Citizens' Telephone Company extended its line to meet complainant's line; and so the two were connected. The Citizens' Telephone Company is also connected at Jefferson City with the People's Telephone & Telegraph Company, but the latter is not connected with the complainant.

The purpose of the present bill is to compel the two defendants to make an electrical connection at Jefferson City between the complainant and the defendant People's Telephone & Telegraph Company through the Citizens' Telephone Company, so as to give to the complainant the benefit of the lines of the two defendants, in order that any patron of the complainant on any of its lines can, through the switchboards at Morristown, Jefferson City, and Knoxville, talk with any person he or she may desire on the lines of either of the two defendants;

that is, to secure for the complainant the effect of a consolidation of the three lines.

It appears from the bill and from the evidence that there is an operating agreement between the two defendants for an interchange of business whereby each can use the lines of the other at an agreed rate for messages or conversations; the rate fixed for a conversation of five minutes from Jefferson City to Knoxville being ten cents. The complainant insists that on the payment of this rate it is entitled to have its lines connected with the two defendants, to the end that it may use the line of the People's Telephone & Telegraph Company into Knoxville, and all other points served by that company.

It appears that patrons of the complainant living at Morristown, and other points served by the complainant's line, called the exchange at Jefferson City for the purpose of conversing with parties at Knoxville, but that the Citizens' Telephone Company, under the direction of the People's Telephone & Telegraph Company, declined to make the required connection with the latter, although complainant tendered ten cents for each message so offered and refused. The service was offered to the complainant of having its messages transmitted or repeated to Knoxville, but this was refused, complainant insisting that it had, under the law, a right to a through connection with Knoxville over the defendants' lines, so that one could talk directly from Morristown to the desired party in Knoxville.

It is insisted on behalf of the complainant that it is entitled to the right claimed under sections 10 and 11

of chapter 66 of the Acts of 1885. It also insists that, inasmuch as the Citizens' Telephone Company is accorded by the People's Telephone & Telegraph Company the right to use the lines of the latter into Knoxville, a refusal to permit to complainant the same right on the same terms is an unlawful discrimination and in violation of the common law, as well as of the statute.

The sections of the statute above referred to are as follows:

"Sec. 10. Every telegraph or telephone company doing business in this State, must, under penalty of five hundred dollars for each and every refusal so to do, transmit over its wires to localities on its lines for any individual, or corporation, or other telegraph or telephone company, such messages, dispatches, or correspondence as may be tendered to it by, or to be transmitted to any individual or corporation, or other telegraph or telephone companies, at the price customarily asked and obtained for the transmission of similar messages, dispatches, or correspondence without discrimination as to charges or promptness; the penalty herein prescribed shall be recoverable in any court through proper form of law, one-half of which shall go to the prosecutor and one-half to the State.

"Sec. 11. Every telephone company doing business within this State, and engaged in a general telephone business, shall supply all applicants for telephone connection with facilities without discrimination or partiality, provided such applicants comply or offer to comply with the reasonable regulations of the company, and

no such company shall impose any condition or restriction upon any such applicant that are not imposed impartially upon all persons or companies in like situation, nor shall such company discriminate against any individual or company engaged in lawful business by requiring as condition for furnishing such facilities that they shall not be used in the business of the applicant or otherwise, under penalty of one hundred dollars for each day such company continues such discrimination and refuses such facilities after compliance or offer to comply with the reasonable regulations, and time to furnish the same has elapsed, to be recovered by the applicant whose application is so neglected or refused."

A preliminary question is raised to the effect that the act above referred to is void because in violation of the constitution of this State on several grounds stated.

This act has been on our statute books for more than a quarter of a century. It has been tacitly treated by the court, the bar, and the people of the State as constitutional, except on a ground directed to the formality of its passage settled in 118 Tenn., 1, 101 S. W., 770, *infra,* and many important and valuable rights have been based thereon, and nothing could induce us now to declare it unconstitutional, except the clearest and most undoubted reasons. The act has been often before the court in cases arising under it, and has been applied in more than one reported case. *Telegraph Co.* v. *Nashville,* 118 Tenn., 1, 101 S. W., 770; *Vaught* v. *East Tennessee Telephone Co.,* 123 Tenn., 318, 130 S. W., 1050. It is a doctrine of the law that when acts have been long

treated by the court as constitutional, and important rights have been based thereon, it may refuse to further consider the question. *Kelly* v. *State,* 123 Tenn., 516, 548, 132 S. W., 193; *Richardson* v. *Young,* 122 Tenn., 471, 517, 125 S. W., 664. We shall add a few other illustrations. In *Ferris* v. *Coover,* 11 Cal., 175, it was held that courts would not inquire into the constitutionality of an act, if, by a long line of adjudications and by the acts of the government, it had been treated as constitutional; in *Linck* v. *Litchfield,* 141 Ill., 469, 477, 31 N. E., 123, that the validity of an act relating to the organization of cities and villages which authorized a city to adopt a certain article by ordinance without requiring the vote of the people, even if orignally doubtful, had been determined by direct and incidental recognition for twenty years, and was not an open question; in *Rumsey* v. *People,* 19 N. Y., 41, 52-58, that after the organization of a county, and its general recognition throughout the government of the State, and after it had been represented in several sessions of the legislature, it was contrary to public policy to hold such organization void on account of the want of power to erect such a county; in *Kenney* v. *Hudspeth,* 59 N. J. Law, 504, 532, 533, 37 Atl., 67, that where for more than a generation every department of the government had construed contradictory provisions of the constitution of the State as conceding to the legislature power to reduce the number of judges of the court of common pleas whenever, in its opinion, the public good required it, this construction would be binding; in *Nye* v. *Foreman,* 215 Ill., 285, 288,

74 N. E., 140, that in view of the fact that the constitution of 1870 of the State of Illinois, art. 10, section 7, providing that the county affairs of Cooke county should be managed by the board of commissioners, etc., had long been construed by both executive and legislative departments of the State government as giving the board of commissioners power to make appropriations from the funds of the county to pay assistants to the State's attorney, that construction should be acquiesced in by the courts; in *Levin* v. *U. S.*, 128 Fed., 826, 829, 63 C. C. A., 476, that the contemporaneous construction of a constitutional provision by those who framed it, and by statesmen, legislators, and judges, and the acquiescence of all departments of the government in such interpretation for a hundred years, conclusively determined the meaning of the provision; in *City of Terre Haute* v. *Evansville & T. H. R. Co.*, 149 Ind., 174, 186, 46 N. E., 77, 37 L. R. A., 189, that, where a construction of the constitution by the legislature had been acquiesced in for forty years, it would not be disturbed.

We have, however, considered on their merits the various points made in the brief of counsel against the constitutionality of the act, and we are of the opinion that all of them shoud be overruled. We deem it unnecessary, in view of what has been said, to incumber this opinion with a detailed statement of the points referred to or of our reasons for overruling them. They are such as have been many times examined and discussed in our reported cases, save one. This we shall mention briefly. It is that section 10 of the act is void

because of its penalty clause. This, it is said, makes the act violative of section 16 of article 1 of the constitution of this State, which provides: "That excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." It appears that the complainant in the present case has sued for $16,500, an accumulation of penalties, for various alleged violations of the tenth section. The act would be void on the ground stated if it justified such heaping up of penalties, which are in effect but fines, because such accumulation would in no long time destroy the enterprises against which the fines are leveled. It was not intended that this and other statutes of the kind should be used for speculative purposes. It is the duty of the party complaining to sue for the first violation, in order that the company or person attacked may have due notice of the complaint, and an opportunity of complying, as held in *Parks* v. *R. R. Co.*, 13 Lea. 1, 49 Am. Rep., 655. So construed, the section referred to is not unconstitutional.

We come now to the question whether there was an unlawful discrimination against the complainant.

Sections 10 and 11 do not support the claims asserted in complainant's bill.

Those sections are merely declaratory of the common law for the purpose of preventing discriminations (*Vaught* v. *East Tenn. Telephone Co.*, 123 Tenn., 318, 130 S. W., 1050, 31 L. R. A [N. S.], 315; *Cumberland Telephone & Telegraph Co.* v. *Kelly*, 160 Fed., 316, 87 C. C. A., 268), with penalties added; and should be con-

strued, as held in those cases, in the light of the common law, and its reasons.

Telephone and telegraph companies are common carriers of negligence, and must give the same service on the same terms to all who apply therefor, without partiality or unreasonable discrimnation. *Delaware & A. Telegraph & Telephone Co.* v. *Delaware,* 50 Fed., 677, 2 C. C. A., 1; *Missouri* v. *Bell Telephone Co.* (C. C.), 23 Fed., 539; *Postal Cable Telegraph Co.* v. *Cumberland Telephone & Telegraph Co.* (C. C.), 177 Fed., 726; *Com. Union Tel. Co.* v. *New England Tel. Co.,* 61 Vt., 241, 17 Atl., 1071, 5 L. R. A., 161, 15 Am. St. Rep., 893; *State* v. *Nebraska Telephone Co.,* 17 Neb., 126, 22 N. W., 237, 52 Am. Rep., 404; *United States Telegraph Co.* v. *Western Union Telegraph Co.,* 56 Barb., (N. Y.), 46; *Central Union Telegraph Co.* v. *State,* 118 Ind., 194, 19 N. E., 604, 10 Am. St. Rep., 114; *Cogdell* v. *Western Union Tel. Co.,* 135 N. C., 431, 47 S. E., 490; *Danaher* v. *Southwestern Telegraph & Telephone Co.,* 94 Ark., 533, 127 S. W., 963, 30 L. R. A. (N. S.), 1027. But this does not mean that a telephone company is bound to permit another telephone company to make a physical connection with its lines for the purpose of using them as its own subscribers use them. There is a wide difference between a telephone company's transmitting to any point on its line equally and indiscriminately the messages of all companies that offer them and are willing to pay the same fare for the same service, and admitting such outside companies or their patrons to the same use of its lines, that its own patrons are entitled to. The supreme

court of Indiana, however, in a case cited, and strongly relied on by complainant, has taken what we regard as an extreme view of the common-law obligations of such companies. *State, ex rel.* v. *Cadwallader,* 172 Ind., 619, 87 N. E. 644, 89 N. E. 319. After laying down in forcible language the principle that each telephone company is independent of all others, and that no telephone company can under the common law compel another to admit it to connection with the latter's switchboard, that such right is a privilege to be obtained by contract or by a proper statute, and that the opposite view would result in confiscation (Id., 629-636 of 172 Ind., 87 N. E., 319), that court goes further, and holds that, if a telephone company make a contract for an indefinite time with some third company whereby such access is given, it loses its independent *status,* that it cannot withdraw, and it must as a common-law duty accord the same privilege, on the same terms, to any other telephone company similarly situated, to the extent of the capacity of its exchange (Id., 640, 641 of 172 Ind., 87 N. E., 644, 89 N. E., 319).

The case just referred to correctly holds, as we understand the law, that each telephone company under the common law is independent of all other telephone companies, save for the duty to receive and forward to any point on its line messages received from such other company or companies, and hence that it is not bound to accord to any such outside organization or its patrons connection with its switchboard on an equality with its own patrons; that such connection is a privilege to be

accorded only as the result of contract, or in obedience to a statute. We concur in the reasoning that an opposite rule would soon result in the practical confiscation of the larger plants having long-distance lines, since the motive would be insistent and irresistible in small companies organized for the purpose, or depleted and run down companies, to demand such connection; the maintenance of the long lines being without expense to them. But we are unable to agree with the supreme court of Indiana that, if a contract for such connection be once made without the specification of any time for it to run, this connection cannot thereafter be severed without the joint concurrence of the companies so in combination; nor are we able to see how the exercise of the right of contract to effect such a joint traffic arrangement between two companies can confer any right upon other companies, not parties to the contract, to a participation in its benefits. Such a rule, while in terms asserting the independent right of contract, denies its existence in fact. Moreover, it enables one company to take the property of another for public use without compensation, and deprives the latter company of its property without due process of law, in violation of the constitution of this State and of the United States.

A question closely similar was presented in *Atchison, etc., R. R. Co.* v. *Denver, etc., R. R. Co.,* 110 U. S., 667, 4 Sup. Ct., 185, 28 L. Ed., 291. In that case it appeared that the Atchison, Topeka & Santa Fe Railroad Company and the Denver & Rio Grande Railroad Company had established a junction and a joint station. Subse-

quently the Denver & New Orleans Railroad Company effected a junction with the Atchison, Topeka & Santa Fe Railroad Company, and then insisted that it, too, was entitled to a joint station, and that the failure to comply with this demand was an unjust discrimination against it. Speaking to this question, the supreme court of the United States said: "A railroad company is prohibited, both by the common law and by the constitution of Colorado, from discriminating unreasonably in favor of or against another company seeking to do business on its road; but that does not necessarily imply that it must stop at the junction of one and interchange business there, because it has established joint depot accommodations and provided facilities for doing a connecting business with another company at another place. A station may be established for the special accommodation of a particular customer; but we have never heard it claimed that every other customer could, by a suit in equity, in the absence of a statutory or contract right, compel the company to esablish a like station for his special accommodation at some other place. Such matters are and always have been proper subjects for legislative consideration, unless prevented by some charter contract; but, as a general rule, remedies for injustice of that kind can only be obtained from the legislature. A court of chancery is not, any more than is a court of law, clothed with legislative power. It may enforce in its own appropriate way the specific performance of an existing legal obligation arising out of contract, law, or usage, but it cannot create the obligation. In the pres-

ent case the Atchison, Topeka & Santa Fe and the Denver & Rio Grande Companies formed their business connection and estblished their junction or joint station long before the Denver & New Orleans Road was built. The Denver & New Orleans Company saw fit to make its junction with the Atchison, Topeka & Santa Fe Company at a different place. Under these circumstances, to hold that, if the Atchison, Topeka & Santa Fe continued to stop at its old station, after the Denver & New Orleans was built, a refusal to stop at the junction of the Denver & New Orleans was an unreasonable discrimination as to facilities in favor of the Denver & Rio Grande Company, and against the Denver & New Orleans, would be, in effect, to declare that every railroad company which forces a connection of its road with that of another company has a right under the constitution or at the common law to require the company with which it connects to do a connecting business at the junction, if it does a similar business with any other company under any other circumsances. Such, we think, is not the law. It may be made so by the legislative department of the government, but it does not follow as a necessary consequence from the constitutional right of a mechanical union of tracks, or the constitutional prohibition against undue or unreasonable discrimination in facilities."

In Montana there is a provision by statute under the constitution of that State for connections between telephone companies upon the payment of compensation asserted under the right of eminent domain. Under such provision it was held in *Billings Mutual Telephone Co.*

v. *Rocky Mountain Bell.Telephone Co.* (C. C.), 155 Fed., 207, that a telephone company operating a local exchange, on payment of compensation to be ascertained as provided by the statute, could require another company operating long-distance lines to permit a connection with such lines, and also their use by receiving and forwarding messages through such connection from subscribers of the other company substantially as it did messages tendered by its own local subscribers.

Our act of 1885, supra, contains no such provisions nor have we knowledge of any other statute in this State that does, though doubtless the legislature could enact such a law if it deemed the public good required it.

We are of the opinion on the grounds above stated that the defendant companies acted within their rights when they refused to yield to the complainant company the intimate connection it demanded.

It results that the chancellor committed no error in dismissing the bill, and his decree is affirmed.