Nashville Trust Company, Trustee and Transferee of Property of John H. Cheek, Donor v. Commissioner. Eleanor Cheek Plaxico (Individual) (Formerly Eleanor Ritchey Cheek) v. Commissioner. Susan Cheek Eason (Individual) (Formerly Susan Anderson Cheek) v. Commissioner. John Hancock Cheek, Jr. (Individual) v. Commissioner.
Nashville Trust Co. v. Comm'r
Docket Nos. 111115, 111490, 111491 and 111492. United States Tax Court
1943 Tax Ct. Memo LEXIS 53; 2 T.C.M. (CCH) 992; T.C.M. (RIA) 43485; November 15, 1943
*53 Hilary H. Osborn, Esq., 407 American Trust Bldg., Nashville, Tenn., for the petitioners. Frank M. Thompson, Jr., Esq., for the respondent. MELLOTT
Memorandum Opinion MELLOTT, Judge: The Commissioner has determined that each petitioner in these consolidated proceedings is liable, as a transferee of the property of John H. Cheek, for gift taxes in the amount of $2,051.34 for the calendar year 1937. The facts are found to be as stipulated but will be set out herein only to the extent necessary for an understanding of the issues to be determined. [The Facts] John H. Cheek (hereinafter referred to as the donor) is a resident of Nashville, Tennessee. The three individual petitioners are his children. Susan was born March 3, 1919, Eleanor December 6, 1921 and John H. Jr., June 26, 1924. Nashville Trust Co. is a Tennessee corporation with its principal office at 315 Union Street, Nashville, Tennessee. The donor filed gift tax returns with the collector of internal revenue at Nashville, Tennessee, on March 16, 1936, March 11, 1937 and March 14, 1938, each return being for the preceding calendar year. The deficiency in tax results principally from an increase by respondent of $25,829.67 *54 in the total net gifts made by the donor in years preceding 1937. This amount consists of three items or adjustments - disallowance of $15,000 (three $5,000 exclusions) claimed by the donor in his 1935 return under Section 504 of the Revenue Act of 1932, [1] inclusion of $5,117.67 representing "the computed value of premiums" on two insurance policies assigned by the donor to his children in 1935, and $5,712.00, the total premiums paid by the donor in 1936 on the assigned policies and not included by him as a gift or gifts in any return. A portion of the deficiency results from the failure of the Commissioner to allow, as an exclusion from total gifts made in 1937, the premiums paid by the donor during that year ($5,712) upon the two policies of insurance which he had previously assigned to his children. *55 During 1935 and 1937 the donor transferred to the Nashville Trust Co., as trustee for his children, property and cash having a value of $132,450. The trust instrumetis not in evidence. The Commissioner determined that the property so transferred constituted gifts of future interests against which no exclusions are allowable under Section 504 (b), supra. On the 18th day of December 1934 Cheek, the donor, made application for two policies of insurance upon his life, in the amount of $75,000 each, with the New York Life Insurance Co. One was issued on December 31, 1934 and one on January 8, 1935. Each application designated his three children as beneficiaries, "share and share alike." Each policy contains 5 optional methods of settlement. Each provides that if the policy be assigned the optional methods of settlement shall not apply or be available without the consent of the company. Option 4 reads as follows: Option 4. - The proceeds in whole or in part may be left with the Company at interest until the death of the payee. The Company will pay interest thereon annually, semi-annually, quarterly or monthly, as may be agreed upon, at such rate as the Company may declare each year *56 on such funds, and guarantees that the interest per one thousand dollars of the proceeds shall be not less than $30 when paid annually, $14.89 when paid semi-annually, $7.42 when paid quarterly, or $2.47 when paid monthly. Attached to each policy and bearing the same date as the issuance thereof is a "Settlement Agreement." It directs that, upon receipt of due proof of the death of the insured, the proceeds shall be paid to his named children, share and share alike or to the survivors or survivor. If any of the beneficiaries be then deceased, and if there be then living any children or child of such deceased, "the share to which such deccased would have been entitled if living, shall be paid in one sum to the then living children or child of such deceased in equal shares, but if none of said beneficiaries nor any children of any of them be then living, said proceeds shall be paid in one sum to my Executors, Administrators or Assigns." The agreements direct that the share apportioned to each of the three children "shall be left with the company at interest as under Option (4) of the Optional Methods of Settlement. Said company shall pay the interest monthly on such share to * * * *57 [the named child] if living, during his [or her] entire lifetime." Other provisions direct how the proceeds are to be paid in the event any child shall die after the Company has received due proof of the death of the insured. On January 7, 1935 the insured executed an assignment, of the policy first issued, to his three named children "share and share alike, or to the survivors or survivor - subject to the terms of a settlement agreement dated the 31st day of December, 1934 * * * and all dividend, benefit and advantage to be had or derived therefrom, subject to the conditions of the said Policy, and the Rules and Regulations of the company, and to any indebtedness" to the company against the policy. The stated consideration for the assignment was "natural love and affection." A similar assignment of the other policy was executed on February 8, 1935 and both were transmitted to the insurance company. The donor's wife, mother of the three children, has had custody of the policies since the execution of the assignments. Each policy provides that the surplus accruing thereon shall be ascertained annually. Beginning at the end of the second insurance year and on each anniversary thereafter *58 such surplus as shall have been apportioned to the policy shall, at the option of the insured either be: (a) Paid in cash; or (b) applied toward payment of premiums; or (c) applied to purchase participating paid-up insurance; or (d) left to accumulate interest and to be withdrawn at any anniversary of the policy or at its maturity. The apportioned surplus has been left with the company as provided in (d). The accumulations have been as follows on each policy: 1936
$ 515.25
1940
$2,870.69
1937
1,060.21
1941
3,531.31
1938
1,625.27
1942
4,085.75
1939
2,238.78
Both policies provide for guaranteed loan and surrender value after three full years' premiums have been paid. The donor was 44 years of age when the policies were issued and the loan and surrender value of each, after three full years' premiums were paid, i.e. December 31, 1936 and January 8, 1937, was $47.00 for each $1,000 of insurance or a total of $7,050. The donor paid a premium of $2,856 on each policy ($5,712 on both) during the years 1935, 1936 and 1937. The amounts paid in 1935 were included in total gifts made during that year. The amounts paid in 1936 were not included in any gift tax return. *59 The amounts paid in 1937 were included in the gift tax return filed by the donor for that year. The "computed value of premiums" - $5,117.67 - on the two policies was not included in the donor's gift tax return for 1935, the year in which the policies were assigned to his children. The respondent allowed no amount as an exclusion from the gifts made by the donor in 1937. Notices advising the individual petitioners herein of the Commissioner's determination that they and each of them are liable, as transferees of the property of John H. Cheek, for his gift tax for the calendar year 1937 in the amount of $2,051.34, were mailed on March 13, 1942. A similar notice was mailed to the Nashville Trust Co. on February 20, 1942. In the last-mentioned notice it is stated, inter alia: The Commissioner * * * is not estopped from assessing the deficiency in gift tax for the calendar year 1937 against you as Trustee and Transferee of the property of John H. Cheek, and collecting same with interest, because of his failure to determine and assess the deficiency against the said donor within the period during which it could have legally been so assessed, or because of his tentative acceptance *60 of the correctness of the returns as filed for the calendar year 1937 and prior years. [Opinion] Petitioners' first contention is that they may not be held liable as transferees under the circumstances shown above. In other words they contend that since the period within which determination of a deficiency in gift tax could be made against the donor had expired before any notices of transferee liability had been mailed to them, and inasmuch as there is no contention that the transfers had rendered the donor insolvent, thereby making them liable in equity for the tax imposed upon the transfers made by him, that they may not be held liable as transferees under the rationale of such cases as (on appeal 2 C.C.A. [1]), (on appeal 7 C.C.A. [2]), and , (on appeal 8 C.C.A.). The essence of their contention is that these cases were erroneously decided. While that view is shared by the writer of this opinion they are nevertheless controlling here. It follows that petitioners may be held liable, as transferees, *61 for the gift tax of the donor, if any is due from him. The action of the Commissioner in disallowing $15,000 claimed as exclusions in the donor's gift tax return for 1935 is based upon a determination that the gifts made during that year were of future interests in property. The total gifts were $62,279.67, $51,450 of which was made to the trustee for the benefit of the donor's children. The trust instrument is not before us; and since no evidence was offered upon which a conclusion could be reached that the gifts were of present interests in property we must conclude that respondent committed no error in his determination that they were gifts of future interest against which no exclusion may be allowed. That leaves, then, $10,829.67 as the maximum amount which could be allowed as an exclusion from the total 1935 gifts, consisting of $5,117.67, the computed value of the policies when assigned and $5,712, the premiums paid during that year. Inasmuch as the premiums paid in 1936 and 1937 are in the same category as those paid *62 in 1935 but two questions are presented: (1) Were the assignments in 1935 of the insurance policies gifts of future interests in property? (2) Did the donor make gifts of present interests in property when he paid the premiums on the policies? The term future interests in property refers to any interest, whether vested or contingent, limited to commence in use, possession, or enjoyment at some future date. ; and cases therein cited. Petitioners argue that "the computed values of the premiums on assignment dates constituted present interests and benefits to the assignees as their rights under the policies were the same as those of the insured, prior to assignment, and his right to cancel and receive the then present values of the premiums became the right of the assignees immediately upon assignment." Respondent insists that the children had no right to the present enjoyment of the premiums or proceeds upon assignment of the policies and that their use, possession, or enjoyment was postponed to the happening of future, uncertain events. *63 We agree with the respondent. The children were ten, thirteen and fifteen years of age when the assignments were made and the policies were delivered to their mother in whose custody they have since remained. Their interests are defined in the policies, in the settlement agreements attached thereto, and in the assignments. The assignments were made approximately one month after the policies were issued. At that time the policies had no cash surrender, loan, or dividend value. A cash surrender and loan value came into existence only after three full years' premiums had been paid. The surplus accruing to each policy (dividends) depends upon the operations of the insurance company, is to be "ascertained annually," but is not available to the policyholders until the end of the second year. Moreover, the donee-policy-holders were required to be alive at the time the right to receive the cash surrender, loan or dividend value accrued; for the assign ments were "to the survivors or survivor" of the named children. Since the right to receive anything under the policies during the year 1935 was nonexistent or dependent upon contingencies which might never arise we are of the opinion the Commissioner *64 committed no error in determining that the "computed values of the premiums," amounting to $5,117.67 constituted a future interest in property. Cf. ; Pauline Wilkins Tidemann, 1 T.C:, . Whether the premiums subsequently paid by the donor constituted gifts of a present or of a future interest in property is a more difficult question. Petitioners insist that the premiums "constituted a present interest and benefit to donor's children as assignees of the policy. First, it is insisted, the right was theirs as assignees, to cancel the policy and receive the amount of the premiums as assignees of the policy. Second, the payment of this premium by the donor relieved the children of the necessity of making the payment of the premiums themselves * * *." [2] No provisions of the contracts have been called to our attention or found which authorized either the donor or the assignees to cancel the policies and receive the premiums. The premiums were paid for the purpose of extending the contracts for one year; and, while they added a definite amount to the cash surrender *65 and loan values, as well as an indefinite amount to the dividend values, the money, when paid, belonged to the insurance company. However, as pointed out above, no cash surrender or loan value existed until after three full years' premiums had been paid. The premiums paid in 1935 and 1936, therefore, were clearly gifts of future interest. The premiums paid in 1937 are in a different category. They increased the doneebeneficiaries' rights in the cash surrender, loan and dividend value of the policies and, if such rights were immediately available to them, at least one court has held that they would constitute gifts of present interests. Chittenden v. Hassett, - Fed. Supp. -, (U.S. Dist. Court, Dist. of Mass., June 16, 1943). P.H. 1943, Sec. 62.714. C.C.H. Federal 1943, 10,047. See also Paul, Federal Estate and Gift Taxation, Vol. II Sec. 15.11. Cf. Pauline Wilkins Tidemann, supra. But the right to withdraw the dividends could not be exercised until the amount was ascertained and apportioned by the company; in other *66 words unless the company had a surplus and apportioned part of it on the anniversary of the policies. The right to withdraw the cash surrender value, loan value or dividends was also dependent upon the willingness (and incidentally the competency) of the three children to agree among themselves that the dividends be demanded or the policies be surrendered, cancelled, or used as security for a loan. These were contingencies which might never happen. . The second assertion quoted from petitioners' brief is not elaborated upon or discussed. Apparently the parties agree that the payment of the premiums constituted a gift. In our judgment the Commissioner committed no error in determining that the gifts in issue were of future interests in property against which no exclusions may be allowed under Section 504, supra. Since the notices of transferee liability were mailed within one year after the period of limitation for assessment against the donor, respondent's determinations must be, and they are, approved. Decision will be entered for the respondent in each proceeding. Footnotes
1. SEC. 504. NET GIFTS. (a) General Definition. - The term "net gifts" means the total amount of gifts made during the calendar year, less the deductions provided in section 505. (b) Gifts Less Than $5,000. - In the case of gifts (other than of future interests in property) made to any person by the donor during the calendar year, the first $5,000 of such gifts to such person shall not, for the purposes of subsection (a), be included in the total amount of gifts made during such year.↩
1. TC order affirmed by CCA-2, . The quotations are from petitioners' brief. Similar statements are made in connection with the premiums on each policy for each of the years in issue.
[2]↩ TC decision affirmed by CCA-7, .